Kevin STANFORD, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 90–SC–000913–TG.

Supreme Court of Kentucky.

Jan. 21, 1993.

As Modified on Denial of Rehearing
July 1, 1993.

Joseph Vincent Aprile, II, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Elizabeth A. Myerscough, David A. Smith, Asst. Atty. Gen., Office of Atty. Gen., Frankfort, for appellee.

GERALD KIRVEN, Special Justice.

On January 7, 1981, Barbel Poore was raped, sodomized and murdered in connection with robbery of a service station in Louisville. Appellant, Kevin Stanford, was indicted for murder, first degree robbery, first degree sodomy and receiving stolen property over the value of $100. Trial, August 2–13, 1982, resulted in a jury verdict of guilty of capital murder, first degree robbery, first degree sodomy and re-

ceiving stolen property over the value of $100. The jury fixed punishments of death on the murder conviction and maximum sentences of twenty years on the robbery and sodomy convictions and five years on the receiving stolen property conviction. On September 28, 1982, the Court sentenced Stanford in accordance with the punishments which the jury had fixed. This Court affirmed the judgment of conviction and sentences. *Stanford v. Commonwealth,* Ky., 734 S.W.2d 781 (1987). The United States Supreme Court granted certiorari and affirmed the decision of this Court. *Stanford v. Kentucky,* 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). In 1990, Stanford's counsel filed a motion in the Jefferson Circuit Court to vacate, set aside or correct the judgments entered against him, as permitted by RCr 11.42. The motion was 25 pages long and raised 50 grounds for relief. On June 28, 1990, the circuit court judge, who was not the judge who tried the case, entered an order overruling Stanford's motion. This is an appeal from that order.

We affirm the circuit judge's order overruling the motion and will discuss the eight arguments for reversal which Stanford's counsel urged in briefs and oral argument.

I. The court below erred in failing to conduct an evidentiary hearing on the RCr 11.42 motion.

■ Even in a capital case, an RCr 11.42 movant is not automatically entitled to an evidentiary hearing. *Skaggs v. Commonwealth,* Ky., 803 S.W.2d 573, 576 (1990).

If the record refutes the claims of error, there is no basis for granting an RCr 11.42 motion. *Glass v. Commonwealth,* Ky., 474 S.W.2d 400, 401 (1971).

■ Section (5) of RCr 11.42 requires a hearing on the motion only "if the answer raises a material issue of fact that cannot be determined on the face of the record." Section (6) requires findings only "at the conclusion of the hearing or hearings." It follows, as decided in the last two cited cases, that a hearing is required only if there is an issue of fact which cannot be

determined on the face of the record. If there is no hearing, then no findings are required. As will be seen, later in this opinion, the record refutes the specific claims which are the bases of appellant's contentions that he should have had a hearing and findings.

While the record herein does not demonstrate error in the trial court's failure to conduct a hearing pursuant to RCr 11.42(5), this Court would emphasize that trial courts generally should hold such hearings to determine material issues of fact presented.

II. The lower court erred in overruling appellant's RCr 11.42 motions without giving any explanation as to the grounds for the decision.

What has been said in point I., above, generally disposes of this contention. The specific bases for rejecting this general contention will appear in following sections of this opinion.

### III. There was no evidentiary hearing on claims of:

1. Error in the interpretation of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

2. Ineffective counsel in failing to argue:
    a. the *Enmund* interpretation;
    b. for a trial of Stanford, separate from that of his co-defendant Buchanan;
    c. for the disqualification of the circuit judge;
    d. all of the foregoing alleged errors *on the appeal.*

Stanford claims that the trial court erroneously interpreted *Enmund* to foreclose the giving of a death sentence to a non-trigger man. The evidence was that Stanford, and not his co-defendant Buchanan, actually shot Barbel Poore. Subsequent interpretations of *Enmund* particularly in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), clarified *Enmund* to mean that there is no automatic exemption of the non-trigger man from the death penalty. Rather, the circumstances of the non-trigger man's participation in the crime should be considered and, if they are of such gravity as to make the death penalty appropriate, then imposition of the death penalty is not forbidden.

■ Stanford argues that the clarifying rule in *Tison* is applicable to his case because that decision was rendered in 1987 before the death sentence for Stanford became final in 1989, with the decision of the United States Supreme Court, affirming this Court, rendered that year. Stanford is correct in this contention.

It does not follow, however, that the error in interpreting *Enmund* to give an automatic exemption to Buchanan from the death penalty is an error redounding to Stanford's benefit.

■ That the Commonwealth's attorney agreed with the interpretation of *Enmund*, which Buchanan's trial counsel urged, is immaterial. The Commonwealth's attorney had the discretion to determine whether to seek the death penalty against Buchanan. *Commonwealth v. Self*, Ky.App., 802 S.W.2d 940, 942 (1991). A joint trial in which the death penalty is sought against only one of the co-defendants is permissible. *Foster v. Commonwealth*, Ky., 827 S.W.2d 670, 679–680 (1992).

As to ineffective counsel's failing to argue:

### (a) Error as to *Enmund.*

What has been said, above, disposes of that contention, since regardless of the reason, the Commonwealth's attorney had discretion to proceed with a joint trial, seeking the death penalty against only one of the co-defendants.

### (b) As to seeking a separate trial for Stanford.

The record shows that his counsel sought a separate trial for him before the joint trial began and repeated the demand after the trial was in progress.

(c) As to disqualifying the trial judge on the basis that he was a candidate for election to this Court.

Counsel fails to support this bare charge with even a speculative basis for the judge's candidacy's having, in any way, affected the conduct of the trial. Followed to a logical conclusion, counsel's contention would mean that incumbent judges running for reelection would have to stop trying cases until after the election, an intolerable burden upon the judicial system.

(d) As to failure to argue any of the foregoing points on appeal.

As just shown, the foregoing contentions are without merit. Reiterating them on an earlier appeal would have likewise been fruitless.

IV. Trial counsel's conflict of interest.

Appellant contends that trial counsel, who were staff members of the public defender's office, had an interest in perpetuating the trial court's erroneous interpretation of *Enmund,* as prohibiting the application of the death penalty to the non-trigger man. His reasoning is that, since trial counsel would be handling other murder cases, it would be advantageous to future non-trigger men defendants to be able to proceed with their cases, guaranteed against imposition of the death penalty.

■ In opposing this argument, the Commonwealth contends that Stanford had no "standing" to object to the prosecutor's decision not to seek the death penalty against his co-defendant Buchanan. The argument misses appellant's point, which is not to have acquiesced in more lenient treatment of Buchanan, but to maintain that leniency extended to Buchanan was prejudicial to Stanford. We do not accept the Commonwealth's contention. Stanford had the right to show, if he could, prejudice to him resulting from the presentation and submission of the case on the basis that the jury could not fix Buchanan's punishment as death but could punish Stanford with death.

■ In the light of this holding, does it follow that Stanford was entitled to an evidentiary hearing to attempt to develop that his trial counsel, influenced by a desire to avoid the death penalty for other clients in other cases ineffectively defended Stanford?

To answer this question, the Court will presume that an evidentiary hearing would have established the fact that Stanford's counsel had in their minds a desire to keep the erroneous *Enmund* ruling in their arsenal of defense for future clients.

Review of the record of trial counsel's and appellate counsel's arguments about the prejudicial effect on Stanford of presenting and submitting his case, in the joint trial with Buchanan, on the basis that Buchanan was exempt from the death penalty and that Stanford could be punished with death reveals vigorous arguments, well supported by reason, fact and authority. All of this, this Court considered in affirming Stanford's conviction and punishment in *Stanford v. Commonwealth,* Ky., 734 S.W.2d 781, 787 (1987). There is no basis in the record that Stanford's counsel, even though they lost the point, could have, somehow, done better had they not had in mind later cases and other clients. This Court "will not examine anew an appeal reviewed, considered and decided by this Court." See *Hicks v. Commonwealth,* Ky., 825 S.W.2d 280, 281 (1992), a case, like this, in which the issue was whether appellant had "effective assistance of counsel on appeal." (*Ibid.*)

V. Failure to complain of Detective Chesser's testimony, voir dire him and establish that his remark was intended.

■ Appellant complains of ineffective representation because his trial counsel failed to object adequately to Detective Chesser's testimony, to voir dire him out of the jury's presence, to establish that the improper comment was intentional and to challenge the trial judge's presumption that the remark was inadvertent and unintentional.

A beginning point is to quote the record on what Detective Chesser actually said. Here it is:

> Calvin Buchanan had been implicated by Kevin Stanford as being the person who had participated....

At this point, Stanford's counsel objected and moved to discharge the jury.

The trial judge did not sustain the motion, but offered to admonish the jury to disregard what had been said. Stanford's counsel stood on his motion to discharge the jury and declined the offer of an admonition. The court explained the refusal to discharge the jury:

> ... [A]ll it really says is that Calvin Buchanan was named by Kevin Stanford as being involved and I don't think ... just don't feel at this point, it's reached a point where it's prejudicial or it's reached a point where the Jury needs to be discharged....

This Court agrees with the trial court's appraisal of the remark. The Court is willing to indulge the presumption that Detective Chesser willfully and deliberately made the statement. An evidentiary hearing could develop nothing more favorable to appellant than this presumption. What Detective Chesser's motivation was is immaterial, however, in the circumstances that these few words, spoken in the course of a guilt phase trial where the record is in ten volumes and totals over 1,300 pages is not prejudice of such magnitude as would have changed the outcome of the case. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Stanford's counsel does not contend that any error relating to Detective Chesser's comment meets the *Strickland* test.

VI. Failure to question the venire about pretrial publicity, reasonable doubt and capital punishment.

Appellant contends the trial counsel were ineffective because of their failure during general voir dire to interrogate the venire about pretrial publicity, reasonable doubt and capital punishment. Trial counsel had tendered written questions, which they desired to ask, or have the judge ask. The judge did not permit these questions to be asked during individual sequestered voir dire. These questions included the three subjects above mentioned. Five of the questions related to reasonable doubt. The record reflects, contrary to appellant's contention, that appellant's counsel, Buchanan's counsel, and the prosecution covered all of these reasonable doubt questions during the general voir dire. Appellant cannot justly complain about ineffective counsel in failing to pose reasonable doubt questions when, in fact, the questions were asked.

As to pre-trial publicity, the record reflects that the trial judge adequately covered this subject during the sequestered, individual voir dire.

■ The main thrust of appellant's contention relates to his trial counsel's failure to ask life qualifying questions during the general voir dire. The Commonwealth argues that not posing the question was a matter of deliberate trial tactics by the defense. The Court will not speculate about why counsel failed to ask such questions.

Stanford would have the Court apply *Morgan v. Illinois,* —— U.S. ——, 112 S.Ct. 2222, 119 L.Ed.2d 492, decided June 15, 1992, to this case. Even though appellant's counsel admits that the decision in Stanford's case became final on June 26, 1989, counsel makes a persuasive argument for this Court to apply *Morgan* now.

The rule of *Morgan* which counsel would have this Court follow is thus stated:

> A juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do.

*Morgan,* —— U.S. at ——, 112 S.Ct. at 2229, 119 L.Ed.2d at 502.

Even though *Morgan* had not then been decided, Stanford's trial counsel included the following question as item 2 in their list of 29 proposed voir dire questions relating to the death penalty:

> "2. Would you automatically vote in favor of the death penalty upon a conviction

of murder even if you had the discretion to give a lesser punishment?"

This Court considered that question and the 28 others on the direct appeal. Citing the 24th of the 29 questions as one "which may have been better phrased" than the trial judge's death-qualifying question, this Court nevertheless found "no error in the form of the death-qualifying question posed [by the judge] to the jurors ... and there was nothing improper or prejudicial about the question asked by the trial court." *Stanford v. Commonwealth*, Ky., 734 S.W.2d 781, 784 (1987).

The complaint now raised in the RCr 11.42 motion has thus already been considered by this Court and decided adversely to Stanford. It cannot be brought to the Court again. *Hicks v. Commonwealth, supra.*

VII. Failure of trial counsel to move for a new jury for sentencing because the guilt phase jury knew that co-defendant Buchanan was not eligible for the death penalty.

■ Stanford's trial counsel moved for a separate trial for him before his joint trial with Buchanan began and renewed the motion in the course of the trial. Trial counsel and appellate counsel vigorously argued for a separate trial, as pointed out in part IV, page 745, of this opinion. Present counsel argues that trial counsel should have expressly moved for a new jury and separate trial of Stanford, before the new jury, at the sentencing phase of the trial. In opposition to this contention, the Commonwealth argues that a separate trial, at the sentencing phase, would have been detrimental to Stanford. That is speculative. The Court will not indulge in that speculation. It is sufficient that Stanford's counsel now contends that it was ineffective representation for trial counsel not to have demanded a separate trial, before a new jury, for the sentencing phase.

The Court will assume, without deciding, that trial counsel should have made such a motion. The United States Supreme Court has decided that there is no constitutional right to such a trial, in its opinion in the appeal of co-defendant Buchanan. *Buchanan v. Kentucky*, 483 U.S. 402 at 419, fn. 18, 107 S.Ct. 2906 at 2915, fn. 18, 97 L.Ed.2d 336 at 353, fn. 18 (1987). In that case Buchanan's counsel unsuccessfully argued for either the same jury for the guilt phase of both defendants and for the penalty phase for Buchanan (this jury being not "death-qualified") and another "death-qualified" jury for the penalty phase for Stanford. Or, a "death-qualified" jury for the guilt phase for both defendants and for the penalty phase for Stanford and another jury (not "death-qualified") for Stanford's penalty phase.

Rejecting both alternatives, the United States Supreme Court said:

Whatever might be the proper focus of petitioner's demand for relief, the alternatives basically require the Commonwealth either to abandon the 'death qualification' of juries at the guilt phase of a joint trial or to impanel an additional jury. We decline to place either burden on the Commonwealth. (*Ibid.*)

Furthermore, under *Strickland v. Washington, supra,* counsel is under the burden of showing prejudice to Stanford of such magnitude as to have resulted in the probability of a different outcome, namely, that the jury would not have fixed his punishment as death. Counsel has not claimed such prejudice.

VIII. Failure of counsel to call five witnesses at the penalty phase whom counsel used at sentencing.

■ Appellant argues that inasmuch as his trial counsel thought well enough of the testimony of five witnesses to use them at the time of formal sentencing, they inadequately represented Stanford in failing to offer these witnesses during the penalty phase of the trial.

The witnesses were the Rev. Michael Cunningham; Jacqueline Pollock, appellant's sister; Frank Pollock, appellant's brother; Louis Cooper, once a member of appellant's household; and Barbara Ballard, appellant's mother.

We have reviewed the testimony of all five. None offered mitigating evidence. The Rev. Mr. Cunningham presented petitions opposing the death penalty. He espoused his religious opposition to the death penalty. His statement would have been inadmissible if offered as mitigating testimony at the penalty phase. The other four witnesses made statements appealing to the Court not to impose the death sentence but not containing evidence which would have been admissible as mitigating facts at the penalty phase of the trial.

Failure to offer at the penalty phase evidence which would not have been admissible cannot rightly be characterized as ineffective representation.

This concludes the discussion of the eight points urged for reversal but the Court is moved to extend the opinion somewhat.

RCr 11.42(2) provides that the "motion shall be signed and verified by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. Failure to comply with this section shall warrant a summary dismissal of the motion."

The requirement of verification means more than just a signature by the movant before a notary public. The requirement for the statement of "facts on which the movant relies" means more than a shotgun allegation of complaints. To cite two instances, the allegations that, somehow, Stanford was prejudiced because the trial took place before a judge who was running for election to this Court and because his trial counsel accepted an erroneous interpretation of *Enmund* which might benefit their other clients in other cases, are grave charges. Such allegations should not be made, except in good faith. They should be based upon facts which are stated. *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573, 576 (1990). Without a minimum of factual basis, contained in the verified RCr 11.42 motion, the motion should be summarily overruled. It is inappropriate for a movant to seek a hearing hoping, in the words of Mr. Micawber that "something would turn up."

After every trial, win or lose, candid lawyers can think of ways they might have done better. A perfect trial is never required. What is required is a fair trial. We believe Stanford had a fair trial. We therefore affirm.

All concur.

LEIBSON, J., not sitting.