David SANDERS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 1999–SC–0115–MR, 1999–SC–
0195–MR, 1999–SC–0395–MR.

Supreme Court of Kentucky.

June 13, 2002.

Rehearing Denied Dec. 19, 2002.

Elizabeth R. Stovall, Susan M.J. Martin, Department of Public Advocacy, Frankfort, KY, for appellant.

Albert B. Chandler III, Attorney General, Connie V. Malone, Assistant Attorney General, Ian G. Sonego, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

WINTERSHEIMER, Justice.

This appeal is taken from an order of the Madison Circuit Court denying a RCr 11.42 motion by Sanders and his motion pursuant to CR 59.05. Sanders seeks relief from his conviction for two capital murders and two robberies for which he received two death sentences and two twenty-year sentences.

In 1987, Sanders was convicted of killing and robbing the proprietor of a convenience store and a visitor who was in the store. Each victim was shot once in the back of the head. At trial, insanity was the sole defense. In 1990, this Court affirmed the conviction on direct appeal in *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990). Sanders filed a petition for writ of certiorari in the United States Supreme Court which was denied in *Sanders v. Kentucky*, 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991), and rehearing was subsequently denied in *Sanders v. Kentucky*, 502 U.S. 1000, 112 S.Ct. 623, 116 L.Ed.2d 645 (1991). In 1993, he filed a RCr 11.42 motion in the circuit court which was denied by an order en-

tered January 28, 1999, without a hearing. In February 1999, Sanders filed a pro se notice of appeal and motion to suspend the rules until appointment of counsel. Shortly thereafter, counsel for the Department of Public Advocacy filed a CR 59 motion to reconsider. The attorney who filed the CR 59 motion also filed a notice of appeal from the January 1999 order denying RCr 11.42 relief. The circuit judge denied the CR 59.05 motion on March 9, 1999. A notice of appeal from this order was also filed. The three appeals in this case have been consolidated in this opinion.

## I. Standard of Review

 We believe it is prudent to again set out the standard of review of claims raised in a collateral attack pursuant to RCr 11.42. Such a motion is limited to issues that were not and could not be raised on direct appeal. *Sanborn v. Commonwealth*, Ky., 975 S.W.2d 905 (1998). An issue raised and rejected on direct appeal may not be relitigated in these proceedings by claiming it amounts to ineffective assistance of counsel. *Brown v. Commonwealth*, Ky., 788 S.W.2d 500 (1990); *Stanford v. Commonwealth*, Ky., 854 S.W.2d 742 (1993).

 Even in a capital case, a RCr 11.42 movant is not automatically entitled to an evidentiary hearing. *Stanford, supra*. An evidentiary hearing is not required concerning issues refuted by the record of the trial court. *Stanford*. Conclusionary allegations which are not supported by specific facts do not justify an evidentiary hearing because RCr 11.42 does not require a hearing to serve the function of a discovery deposition. *Sanborn, supra*.

 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), upheld the decision of a state court not to conduct an evidentiary hearing on claims

of ineffective assistance of counsel. *Strickland, supra*, notes that the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment.

## II. The Flenning Report

 The right to confrontation was not violated because defense counsel cross-examined Dr. Walker without restriction. Due process does not require the prosecutor to disclose information already known by the defendant or counsel and available from a third party.

Sanders contends that the prosecutor was constitutionally required to obtain Dr. Flenning's report and provide it to his counsel pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We cannot agree. Essentially, his argument is that his attorney could have done a better job of arguing his insanity if he had additional information contained in the Flenning report. In considering the report together with all other reports involved, the conclusion by Dr. Flenning is not inconsistent with Dr. Walker's testimony at trial.

 Sanders never denied his involvement in the crime, but he claims that the report supports his defense of insanity. Any evidence withheld must be favorable to the accused and be material to either guilt or punishment. *Brady, supra*. Our review of the Flenning report indicates that it is not exculpatory and it does not support the defense of insanity. Here, the only question to consider as to whether the report is exculpatory is if it supports the insanity defense. Original trial counsel had access to the report of Dr. Walker in which she summarized the interview with Dr. Flenning. Because this report did not support the defense of insanity and could

actually damage Sanders, it was not necessary to call the doctor as a witness.

Reliance by Sanders on *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), is misplaced because that case involved a government investigation of child abuse conducted by social workers employed by a Pennsylvania agency. The U.S. Supreme Court held that the investigation file should be reviewed by the trial court for potential exculpatory or impeachment information under *Brady* and rejected the argument that only a review by defense counsel would be constitutionally adequate. The investigators were not acting at the request of defense counsel and did not submit a report for review by defense counsel.

■■■■ Sanders has the burden of establishing that there is a reasonable probability that the result of the trial would have been different if the allegedly withheld exculpatory documents were disclosed to the defense. *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Claim of error must establish prejudice so as to produce ineffective assistance of counsel. It is not enough for the defendant to show that the error by counsel had some conceivable effect on the outcome of the proceeding. *Strickland.*

■■■■ Sanders argues that *Strickland* should not apply to his trial lawyer because that counsel was subsequently disbarred in an unrelated matter after this trial. *Kentucky Bar Ass'n v. Kevin Charters,* Ky., 89–SC–148–KB. There is no persuasive authority submitted by Sanders to presume that counsel was incompetent to try his criminal case. Other courts have applied *Strickland* in similar cases after rejecting the per se ineffectiveness argument. *See United States v. Rondon,* 204 F.3d 376 (2d Cir.2000); *State v. McCroy,* 259 Neb. 709, 613 N.W.2d 1 (2000). A reviewing court should consider the overall performance of counsel throughout the case in order to determine whether the acts or omissions overcome the presumption that counsel rendered reasonable professional assistance. *Cf. Strickland.* A reasonable investigation is not the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources but also with the inestimable benefit of hindsight would conduct. *Thomas v. Gilmore,* 144 F.3d 513 (7th Cir.1998); *Cf. Baze v. Commonwealth,* Ky., 23 S.W.3d 619 (2000).

■■■ An evidentiary hearing is not automatically necessary in every case to ascertain whether the performance of defense counsel was reasonable. Such an inquiry is objective in nature and is presumed to be reasonable. *Cf. Chandler v. United States,* 218 F.3d 1305 (11th Cir. 2000).

The use of the Flenning report to cross-examine Dr. Walker, or by calling Dr. Flenning as a witness would have resulted in a reinforcement of the argument by the prosecutor about inconsistencies in Sanders' statements and illustrate that Sanders repeatedly changed his version of various events as he was interviewed by different evaluators. The circuit judge correctly rejected the complaints by Sanders about the testimony of Dr. Walker and the report of Dr. Flenning.

### III. Pretrial Statements

■■■ Sanders contends that his trial counsel was ineffective for failing to move to suppress statements that he gave to police before trial. Trial counsel was not ineffective because he failed to seek suppression of Sanders' pretrial statements. We agree with the trial court that Sanders cannot establish prejudice connected with this claim because he has not shown that a motion to suppress would have been suc-

cessful. On the contrary, his alleged assertions of a desire to stop further questioning or to consult with an attorney do not even rise to the level of being "equivocal." His claim that his statements were involuntary due to his state of mind is conclusory and unsupported. In addition, in making a decision on prejudice, the Court should consider all the evidence presented against Sanders. Even if a motion to suppress his statement had been made and sustained, considering the strength of the other evidence presented against Sanders, the outcome of the trial would not have been different.

## IV. Inconsistent Statements

 Trial counsel was not ineffective because of the repeated inconsistencies in statements given by Sanders to police and KCPC staff. The mere fact that Sanders asked to talk to police during the sixth and final interview does not support an inference that the police were forcing him to speak against his will. Sanders testified at trial, admitted his guilt and was certainly free to explain the statements he made to police if they were a result of being coerced or intimidated by the police.

Trial counsel pursued a trial strategy consistent with the statements Sanders had provided to police during his last interview, admitting to the criminal acts, but denying responsibility by virtue of mental disassociative reaction. Trial counsel was not under a duty to try to convince the jury that Sanders had lied to the police because of the pressure he felt from the officers. Sanders never made such a claim until he was interviewed years after the trial by mental health experts. Counsel is not ineffective simply because his client disregards his advice and the client chooses to do so even though what he says to those individuals undermines his defense posture. *Cf. Baze, supra.*

## V. Dr. Cooke

 Sanders alleges that he was denied effective assistance of counsel because his private defense attorney relied on an insanity defense but failed to move for funds for expert witnesses, or that he failed to withdraw once he realized Sanders was indigent and that funds would be needed for the psychiatric exams. Sanders claims that Attorney Charters, who had been hired by his father to replace a public defender, used money earmarked for a mental health expert for his own fee. Sanders reasons that because the circuit court failed to hold an evidentiary hearing he was denied the opportunity to develop the underlying facts of this claim.

We conclude that defense counsel was not ineffective in obtaining the services of a clinical psychologist, Dr. Cooke, free of charge, to serve as the defense mental health expert. Defense counsel cross-examined the prosecution witness, Dr. Walker, regarding disagreements with the testimony provided by Dr. Cooke. Thus, the testimony by Dr. Cooke was intended to reduce the negative effect of the report submitted by Dr. Walker of KCPC.

 *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), commented that "Psychiatry is not, however, an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on the likelihood of future dangerousness." Sanders was sent on his own motion to KCPC for a six-week psychiatric evaluation by a team of social workers, psychologists, a psychiatrist and a neurologist. *Ake, supra,* does not hold that an indigent defendant has a constitutional right to choose the psychiatrist or to receive funds to hire his own. As noted in *Crawford v.*

*Commonwealth*, Ky., 824 S.W.2d 847 (1992), a defendant is not entitled to an additional state provided examination or funds to hire additional experts simply because the initial evaluation is contrary to his defense. The fact that an additional evaluation might be beneficial to the defense does not add credibility to his claim. The trial judge stated that Sanders submitted reports from a psychologist, a psychiatrist and a Ph.D. These experts were retained in connection with a defense of charges resulting from a 1986 shooting in Lincoln County. As correctly observed by the trial judge, the reports and the testimony would have made no difference in the outcome of the trial. The jury rejected the opinion offered by Dr. Cooke and there is no reason to believe they would have accepted a similar opinion simply because it came from a different defense expert. Dr. Cooke indicated that he was willing to testify that in his opinion Sanders satisfied the legal standard for insanity. Thus, Sanders had access to qualified mental health experts to establish his insanity defense. His complaints about ineffectiveness are without merit.

### VI. Effective Cross-examination

■■■ Sanders complains that failing to obtain KCPC records in preparation for cross-examination of Dr. Walker was not a reasonable performance by defense counsel. We must disagree because trial counsel effectively cross-examined Dr. Walker. As we have mentioned before, this Court is not required to determine whether another counsel would have handled the case differently or even better. We will not turn back the clock and retry cases in an effort to second guess what might have been done. *Cf. Dorton v. Commonwealth*, Ky., 433 S.W.2d 117 (1968); *Penn v. Commonwealth*, Ky., 427 S.W.2d 808 (1968).

The RCr 11.42 motion lists 17 points of ineffective assistance of counsel as it concerns the cross-examination of Dr. Walker. In his brief to this Court, Sanders has reduced that number to 15 points.

The records were not exculpatory and would not have created a reasonable probability of a different trial result. None of the KCPC evaluation staff concluded that Sanders was legally insane or lacked criminal responsibility. The conclusion by Dr. Walker that Sanders was sane and responsible for his conduct is consistent with the evaluation reports prepared by the KCPC employees.

### VII. Juror Questioning

■■■ The fact that trial defense counsel did not question a juror who had a passing acquaintance with the father of the victim is not sufficient to demonstrate that counsel was ineffective. Sanders maintains that trial counsel was ineffective because he did not question and did not move to strike a juror who was acquainted with the father of one of the victims. Sanders presents no information indicating the bias which would have been revealed through further questioning of the juror. We must conclude that this allegation of bias on the part of the juror is merely speculative, and that it does not establish any prejudice toward Sanders. The casual acquaintance was not the close relationship needed to imply bias on the part of the juror as found in *Marsch v. Commonwealth*, Ky., 743 S.W.2d 830 (1987).

### VIII. In Chambers Conference

■■■ Conducting a conference in chambers regarding the juror in the absence of Sanders, did not violate either his due process right to be present at all critical stages of the proceeding or his right to confront witnesses. He was not prejudiced by his absence from the brief,

three-minute conference. Sanders did not have a due process right to attend in person. His attorney was present and there is nothing that Sanders could have done by being present. His presence was not required to insure fundamental fairness. His due process rights were not violated. *Cf. Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). The proceedings did not involve any witness. There was no ineffective assistance of counsel.

## IX. Failure to Repeat Voir Dire Questions

Sanders alleges that the failure of trial counsel to question potential jurors either as a group or individually about their knowledge of the case was ineffective. He claims that additional questioning would have produced information sufficient to support striking jurors for cause. We disagree.

The decisions of counsel during voir dire are generally considered to be matters of trial strategy. *Hodge v. Commonwealth,* Ky., 17 S.W.3d 824 (2000). The trial judge questioned jurors about their relationships to the victims and their families as well as asking about exposure to pretrial publicity. Defense counsel did not have to repeat such questions. The voir dire was conducted in three phases. In the first phase, the trial judge questioned the panel; next, the jurors were questioned individually in chambers, and finally the prosecution and defense questioned the remaining potential jurors as a group. There is nothing in this procedure which shows that the decisions of the defense counsel were so ill chosen that they could affect the entire proceedings. There was no ineffective assistance of counsel and there was no prejudice demonstrated by Sanders.

## X. Peremptory Challenges

Sanders claims that the failure of counsel to move that six jurors be stricken for cause required the defense to use peremptory challenges to remove them. He claims that the use of the peremptory challenges, rather than those for cause, resulted in the constructive denial of peremptory challenges. We do not agree.

Trial counsel did seek to strike two of these jurors for cause, but the trial judge refused to do so and that decision was affirmed on direct appeal. There was nothing that would have supported a strike for cause. Sanders raised a number of issues related to the jury selection in his direct appeal but was rejected in all respects. Additional review does not reflect any ineffective assistance of counsel.

## XI. Potential Insanity Strikes

Sanders argues that his defense counsel was ineffective for failing to move to strike for cause four jurors based on their response to voir dire questions as to insanity and alternately for failing to ask follow up questions of them. On direct appeal, Sanders raised a number of unpreserved jury challenges. In this instance, the answer given by the challenged jurors does not indicate that he was denied due process of law. The four jurors involved indicated that they could follow the instructions of the trial judge on insanity. Further voir dire examination was not necessary.

## XII. Lack of Avowals/Bond

Sanders asserts that he was denied effective assistance because an avowal should have been made regarding 1) a videotape taken of him at the jail shortly after his arrest, and 2) his reasons for not seeking bond.

Sanders' private attorney filed a motion to admit a videotape interview, but the trial judge reserved ruling and asked private counsel to get the tape for review prior to trial. The trial judge was not able to review the tape because the public advocate (Sanders' previous attorney) wanted a waiver of privilege signed by Sanders. The delay in the ruling was a result of this desire to have a written waiver of the attorney/client privilege. There is nothing in the record to indicate that the prerequisite of a waiver was ever produced by Sanders. Moreover, this tape was not presented to the trial court at the RCr 11.42 proceedings. In the absence of the tape, there is nothing to complain about related to ineffective assistance. In addition, Sanders has not met his burden of establishing that the tape would have been admissible. The apparent purpose was to show his state of mind. However, the only point in time in which his state of mind is germaine is on the date of the crime, not subsequent thereto.

We find no authority permitting the admission of an unauthenticated tape of a defendant making a self-serving statement and exhibiting self-serving conduct. *See* *McQueen v. Commonwealth*, Ky., 948 S.W.2d 415 (1997); *Sanborn v. Commonwealth*, 892 S.W.2d 542 (1995).

The trial judge correctly ruled that the claim by Sanders concerning the bond issue was subject to summary dismissal based on its failure to meet the standards of RCr 11.42(2). *Foley v. Commonwealth*, Ky., 17 S.W.3d 878 (2000).

### XIII. Lack of Penalty Phase Preparation

Sanders alleges that his counsel did not prepare for the penalty phase until the jury returned the verdict, leaving less than three days to prepare for the penalty phase. He contends that apart from his own testimony which lasted less than 8 minutes, testimony from witnesses presented by his counsel in the penalty phase only lasted 9 minutes and 46 seconds. Sanders also claims that counsel inadequately prepared him for testifying during the penalty phase, in that he only spoke with him for two minutes before the testimony.

■ The complaints by Sanders about inadequate investigation and failure to call additional witnesses in the penalty phase are not sufficient to require either relief or an evidentiary hearing. He asserts that additional family members were available to testify but does not indicate what testimony they would have offered. He also maintains that unidentified friends and clergy could have been called to testify, but does not offer any specifics as to what they would have testified about. The allegations are vague and general. They do not rise to the standards required by RCr 11.42(2). There is no statement about the facts on which he would rely to support his motion. Failure to provide factual support as required by RCr 11.42 provides the basis for summary dismissal of that part of his claim. *Foley, supra.*

■ The reasonableness of an investigation by defense counsel must take into consideration all the circumstances. It is not an investigation that the best criminal defense lawyer in the world would conduct. The burden is on Sanders to give specific facts to establish ineffective assistance of counsel claims, both as to unreasonable performance and prejudice which would produce an unreliable trial. *Strickland.* The decision as to whether or not to call family members as mitigation witnesses is a strategic one which will not be second-guessed by hindsight. *See Fretwell v. Norris*, 133 F.3d 621 (8th Cir.1998). *See also McQueen v. Com., supra.*

Sanders testified on his own behalf during the penalty phase and stated that he was suffering from some kind of mental disease. He did not present anything but speculation to support his claim that he was not fully informed of his right to testify and was not adequately prepared for his testimony. The circuit judge properly denied his RCr 11.42 request.

Sanders also complains that his trial counsel should have requested another competency evaluation. The same claim was raised during his direct appeal. It cannot be presented again at this time. *Sanborn, supra.*

### XIV. Jail Employees and Psychologist

■ Sanders argues that his defense counsel was ineffective for not calling a psychologist and two jail employees to testify about his mental state after his arrest. Sanders did testify himself extensively about his emotional state and suicidal tendencies after his arrest. Additional testimony from either the psychologist or the jailers would have been cumulative. *Cf. Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000). The fact that defense counsel determined not to present such cumulative testimony was not ineffective.

### XV. Marital Privilege

■ Sanders argues that his counsel was ineffective for failing to advise his wife that she could refuse to testify, and that he asked questions which opened the door to damaging testimony. The wife had testified during the guilt phase. Sanders does not offer anything to indicate that the wife was advised or not advised of the marital privilege. The party invoking the marital privilege has the burden of proving its applicability and Sanders has failed to do so.

■ Defense counsel was not ineffective for asking questions that allegedly opened the door to testimony about two violent incidents in the marriage. Defense counsel used the wife's testimony to positive advantage. She explained two violent incidents so as to be consistent with the insanity defense. Sanders had previously raised the issue about the violent incidents in his direct appeal. It cannot be reargued at this point. The allegations presented by Sanders do not support the argument that the trial judge should have conducted an evidentiary hearing about the privilege question. The conduct of counsel was reasonable.

### XVI. Failure of Continuance for Further Evaluation

■ The argument by Sanders that his defense counsel should have requested a continuance in order to allow more time for a more thorough evaluation by Dr. Cooke fails to present any grounds sufficient to justify such a continuance and does not indicate what would have been gained by such a continuance. A review of the entire trial indicates that defense counsel did not hesitate to seek a continuance when he believed one was necessary. In the absence of a motion for a continuance, the presumption must be that counsel did not think one was needed. *Cf. Maye v. Commonwealth*, Ky., 386 S.W.2d 731 (1965). Sanders has not met his burden of overcoming such a presumption. A review of the record indicates that the psychologist had adequate time to interview and test Sanders, as well as to consider the entire matter. There was no basis for requesting a continuance. RCr 9.04; *Taylor v. Commonwealth*, Ky., 545 S.W.2d 76 (1976).

### XVII. Change of Venue

The claim by Sanders of ineffective assistance of counsel in failing to file a motion for change of venue, investigate pre-

trial publicity or seek an expert to support the change of venue motion is without merit. This Court had already determined on direct appeal that Sanders received a fair trial from an impartial jury. Sanders again did not meet his burden to plead specific facts in order to establish an ineffective assistance claim. He merely seeks to relitigate an issue that was disposed of on direct appeal. There was no prejudice resulting from the conduct of defense counsel.

## XVIII. Discovery Motion

■ A careful review of the record indicates that Sanders cannot properly establish either unreasonable performance or prejudice with his claim that defense counsel was ineffective for failure to file a formal discovery motion.

Sanders requests this Court to overrule two cases which hold that post-conviction discovery is not required. *Sanborn, supra; Skaggs v. Redford,* Ky., 844 S.W.2d 389 (1992).

The circuit court properly relied on the open discovery policy that was embodied in a standard discovery order in the circuit court which requires the Commonwealth to furnish a defense attorney with exculpatory evidence. The order also directs the Commonwealth and all law enforcement officers to comply with all reasonable requests for discovery and inspection. The absence of a formal discovery motion does not mean that defense counsel did not informally request or receive discovery. The failure to make an unnecessary motion is not unreasonable. The circuit court correctly noted that the KCPC records were available to Sanders as well as the Commonwealth.

Sanders fails to identify what he would have learned from the grand jury tape, the Flenning report and the results of relevant scientific tests or experiments, if such were undertaken. There is no prejudice arising from the rulings of the circuit court.

This Court declines to reconsider any of the arguments concerning post-conviction discovery. RCr 11.42 does not authorize such proceedings and the cases of *Sanborn* and *Skaggs, supra,* are appropriately decided.

## XIX. Psychiatrist Hearsay

The argument by Sanders that his counsel was ineffective for not objecting to a part of Dr. Walker's testimony as hearsay is without merit. This matter regarding comments by the KCPC chaplain that Sanders expressed remorse only when words were put into his mouth, was disposed of on direct appeal and cannot be relitigated at this time. *Sanborn.*

## XX. Presumption of Sanity Comments

Contention that defense counsel should have objected to the alleged comments by the prosecutor on the presumption of sanity during closing argument was correctly rejected on direct appeal. It cannot be represented. *Sanborn.* Moreover, there is an absence of any allegation of prejudice.

## XXI. Objection to Insanity Defense

The allegation that defense counsel should have objected to the prosecutor's cross-examination of Sanders relating to his insanity defense was rejected on direct appeal. The circuit court correctly denied this claim pursuant to RCr 11.42(2) because it failed to satisfy the requirements of the rule regarding specific pleadings. In addition, there is an absence of any allegation of prejudice.

## XXII. Improper Comments

The claim that defense counsel should have objected to alleged improper com-

ments in the penalty phase closing argument did not satisfy the pleading requirements of specificity set out in RCr 11.42(2) and was thus subject to summary dismissal. In addition there was no allegation of prejudice of any sort. This matter was also raised on direct appeal and cannot be relitigated. *Sanborn.*

## XXIII. Reasonable Doubt

Sanders claims that defense counsel was ineffective for not objecting when the prosecutor allegedly defined reasonable doubt during voir dire examination. This claim was not pled with the specificity required by RCr 11.42(2) and cannot be reconsidered because it was originally reviewed on direct appeal and rejected. It does not raise a question of prejudice as required by *Strickland.*

## XXIV. Jury Selection

The claim that defense counsel should have objected to jury selection procedures was not properly presented with the specificity required by RCr 11.42(2) and had previously been rejected on direct appeal.

## XXV. Penalty Phase Instruction

The claim that defense counsel should have objected to the penalty phase instruction is one that could have been raised on direct appeal. As an unpreserved claim, it was reviewed and rejected by the court on direct appeal; it cannot be considered again. In addition, this Court has repeatedly rejected the argument that the jury must be told that its findings on mitigation need not be unanimous. *Bowling v. Commonwealth,* Ky., 873 S.W.2d 175 (1993). There is no probability that a differently worded instruction on mitigation would have resulted in any difference in outcome. It was not unreasonable for defense counsel not to object.

## XXVI. "Recommended"

The claim that defense counsel should have objected to the use of the word "recommended" in the jury instructions by the trial court was considered and rejected on direct appeal. It cannot be reconsidered at this time. This Court originally determined that apart from the mere use of the word recommend, there was no emphasis or implication tending to diminish the responsibility of the jury.

## XXVII. Failure to Emphasize

■ The failure of defense counsel to emphasize certain mitigating evidence in his closing argument during the penalty phase did not render his trial performance constitutionally deficient or unreasonable. As stated in *Strickland,* this Court is not going to second-guess counsel's choices of which things to stress and which avenues not to pursue as vigorously.

Sanders has not established any probability that the jury would have decided the case differently if counsel had argued the points raised now by Sanders. Sanders has failed to demonstrate any deficient performance by defense counsel.

## XXVIII. Evidentiary Hearing

■ The circuit court correctly concluded that Sanders was not entitled to an evidentiary hearing to develop the factual basis for his RCr 11.42 claims. He did not present any circumstances which required an evidentiary hearing and the authorities he cites in this respect are unpersuasive. It has been previously held that a motion for ineffective assistance must set out all the facts necessary to establish the existence of a constitutional violation and the court will not presume facts omitted from the motion to establish the existence of any violation. *Skaggs, supra.* Even the federal courts do not conduct an evidentiary hearing in death penalty cases when

presented with nothing other than conclusionary statements regarding ineffective assistance. *Barnard v. Collins,* 958 F.2d 634 (5th Cir.1992). Ineffective assistance of counsel claims are reviewed under a standard of objective reasonableness and here, as in many other cases, the reasonableness of the performance of defense counsel can easily be determined from the trial record without an evidentiary hearing.

## XXIX. Discovery

█ Sanders was not entitled to an evidentiary hearing, his discovery claims are not properly preserved and post-conviction discovery is not required by either the state or federal constitution. It was the failure of Sanders to comply with the requirements of the rule that resulted in the denial of his motions without hearing. His argument relating to discovery is not preserved, and he did not move for discovery during the course of his RCr 11.42 proceedings. RCr 9.22. This Court has repeatedly held that post-conviction discovery is not authorized. *See Foley v. Commonwealth, supra.* Restrictions imposed by this Court on collateral attack motions and proceedings pursuant to RCr 11.42 do not violate the constitutional prohibitions upon suspending the writ of habeas corpus. Similar arguments have been rejected by this Court and by federal courts. *See Freeman v. Page,* 208 F.3d 572 (7th Cir.2000); *Commonwealth v. Marcum,* Ky., 873 S.W.2d 207 (1994); *Eubank v. State,* 130 Idaho 861, 949 P.2d 1068 (App.1997).

## XXX. Relitigation

█ There is simply no federal constitutional right to relitigate issues raised on direct appeal in a collateral attack proceeding such as RCr 11.42. The standards adopted for review of unpreserved errors in this case on direct appeal are not contrary to *Strickland.* The standard of review for unpreserved errors has been consistently applied in appropriate circumstances by this Court in reviewing subsequent death penalty cases. *See e.g. Mills v. Commonwealth,* Ky., 996 S.W.2d 473 (1999).

The decision of the Madison Circuit Court denying the RCr 11.42 motion by Sanders and his motion pursuant to CR 59.05 is affirmed.

LAMBERT, C.J., COOPER, GRAVES and JOHNSTONE, JJ., concur.

STUMBO, J., dissents by separate opinion joined by KELLER, J.

STUMBO, Justice, dissenting.

Respectfully, I must dissent because of the failure to conduct an evidentiary hearing on three of the issues discussed herein. I believe that there should have been an evidentiary hearing held to inquire into: the allegation that trial counsel failed to make any preparation for the penalty phase; why trial counsel failed to call certain jail employees and the psychologist who examined Appellant soon after his arrest to provide evidence of his mental state; and counsel's alleged failure to advise Appellant's wife that she could escape testifying against him by asserting the marital privilege. KRS 421.210(1). Therefore, I would reverse and remand for a hearing.

The need for an evidentiary hearing is vital in the examination of counsel's performance during the penalty phase of the trial. At the conclusion of the guilt phase, counsel advised the court that the mitigation testimony had already been presented. The record establishes that the evidence presented by counsel during the penalty phase lasted less than twenty minutes, including Appellant's own testimony.

When the closing argument of counsel is reviewed, we find that there was no reference made to any testimony given during the guilt phase. Further, the argument that was made was extremely abbreviated and failed to include any discussion of mitigation evidence such as medical testimony that Appellant did indeed suffer from a personality disorder, that he repressed anger and his feelings, and that, during his testimony, Appellant did express remorse for his actions. An evidentiary hearing is necessary to determine whether counsel's actions were strategic or incompetent.

The first psychologist to examine Appellant did so during Appellant's pretrial incarceration when the jailer was concerned about Appellant's behavior. It was that professional's opinion that Appellant was under severe emotional stress, was suicidal, and was suffering from a serious psychiatric disorder, possibly of the dissociative disorder type. Appellant complains of his counsel's failure to call this psychologist as a witness to this condition as well as the failure to call two jail employees who witnessed that behavior. What could be more important to a diminished capacity defense than testimony from a trained mental health professional with access to the defendant immediately after the crime, supported by testimony from witnesses who were charged with Appellant's custody and welfare during incarceration? An evidentiary hearing is necessary to determine whether counsel decided not to call these witnesses as a part of trial strategy or out of incompetence.

The final issue that requires an evidentiary hearing is the question of whether Appellant's wife was advised of her right to refuse to testify against him as provided by KRS 421.210(1), as the marital privilege was statutory at the time this matter was tried. Mrs. Sanders' testimony described, among other things, telephone conversations between herself and her husband, talks with the police, and the fact that she gave the police a .22 pistol found in Appellant's truck. She also described an incident during which Appellant held a pillow over her face. This testimony would not have been admissible if Mrs. Sanders' invoked her right not to testify against her husband. There is nothing in the record that indicates that she was aware of that right and therefore, an evidentiary hearing should have been conducted. I would reverse and remand for further proceedings.

KELLER, J., joins this dissent.