# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 18, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0171-MR

DAVID SANDERS                                                   APPELLANT

                     ON APPEAL FROM MADISON CIRCUIT COURT
V.                      HONORABLE JEAN CHENAULT LOGUE, JUDGE
                                   NO. 87-CR-00018

COMMONWEALTH OF KENTUCKY                           APPELLEE

## MEMORANDUM OPINION OF THE COURT

### <u>AFFIRMING</u>

David Sanders appeals as a matter of right[1] from the Madison Circuit Court's order denying his motion to reopen his RCr[2] 11.42 proceeding pursuant to CR[3] 60.02(e) and (f) and RCr 10.02 and 10.06. On appeal, Sanders argues that this Court's recent decision in *Conley v. Commonwealth*, 599 S.W.3d 756 (Ky. 2019), created a new entitlement for criminal defendants to funds for a mental health examination independent of that conducted by KCPC. Sanders argued in his prior appeals that he was entitled to an evaluation by a second, independent mental health expert. He now asserts that his claim should be reevaluated under the new rule announced in *Conley*.

---

[1] Ky. Const. § 110(2)(b).

[2] Kentucky Rules of Criminal Procedure.

[3] Kentucky Rules of Civil Procedure.

We disagree, as *Conley* did not create a new rule, it merely clarified the existing language of KRS 31.185, which applies to *indigent* defendants and defense attorneys operating under Chapter 31 - the Department of Public Advocacy. Since Sanders was not an indigent defendant, KRS 31.185 and *Conley* do not apply to his situation. Even if they did apply, Sanders received the assistance of an independent mental health expert who examined him and testified at trial in support of Sanders' insanity defense. We have held already in Sanders' prior appeals that his expert's testimony, and defense counsel's retention of the expert's services, did not amount to error or ineffective assistance of counsel. Accordingly, we affirm the trial court's order denying Sanders' CR 60.02 motion to reopen.

## I. Background

This case has been making its way through Kentucky courts for over thirty-five years and has been reviewed by this Court multiple times. Thus, we develop the facts and procedural history only to the extent necessary to resolve the issue at hand. In 1987, Sanders was convicted of two counts of first-degree robbery and two counts of capital murder for killing and robbing the proprietor of a convenience store and a customer who happened to be in the store. Each victim was shot once in the back of the head. At trial, Sanders was represented by private counsel, presented a single defense (insanity), and was evaluated by an independent mental health professional, who testified as to Sanders' insanity at the time he committed the offenses.

Prior to Sanders' trial, at defense counsel's request, Sanders' mental health and psychiatric condition were evaluated by the Kentucky Correctional Psychiatric Center ("KCPC") to determine his competency to stand trial and whether he was insane at the time he committed the crimes. KCPC conducted a six-week psychiatric evaluation, with a team of social workers, psychologists, a psychiatrist, and a neurologist. Dr. Walker was the lead KCPC investigator and prepared a report summarizing the team's collective findings that Sanders was competent to stand trial and did not suffer from a mental condition that compromised his ability to conform his behavior to the law. Dr. Walker testified as the Commonwealth's rebuttal witness at trial.

Sanders' counsel also retained Dr. Cooke, a clinical psychologist, to evaluate Sanders' mental condition and serve as the defense mental health expert, on a pro bono basis. At trial, Dr. Cooke testified that Sanders satisfied the legal standards for insanity. However, based on the evidence presented, including Sanders' own testimony, the jury found Sanders' insanity defense unpersuasive and convicted him. Sanders received two death sentences for the murder convictions and two twenty-year sentences for the robbery convictions.

On direct appeal, this Court reviewed Sanders' forty-one alleged errors, both preserved and unpreserved, and affirmed the convictions and sentences. *Sanders v. Commonwealth*, 801 S.W.2d 665 (Ky. 1990). In 1993, Sanders filed a collateral attack pursuant to RCr 11.42 seeking to vacate, set aside, or correct his sentence, alleging twenty-six errors, including the one he now raises in his motion to reopen: that his trial counsel was ineffective for failing to seek

3

funds to retain an additional independent mental health expert. The trial court denied him RCr 11.42 relief, and this Court affirmed. *Sanders v. Commonwealth*, 89 S.W.3d 380 (Ky. 2002), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). Specifically, this Court found that Sanders' counsel was not ineffective as Sanders had access to a qualified mental health expert to establish his insanity defense; the jury simply rejected the opinion of Dr. Cooke. 89 S.W.3d at 387–88. Further, this Court held that Sanders presented no evidence that the jury would have accepted a similar opinion from a different/additional expert, and that Sanders' counsel effectively cross-examined the Commonwealth's expert at trial. *Id.*

In 2005, Sanders filed a motion to vacate his sentence pursuant to CR 60.02, essentially attempting to revive previously raised and resolved issues. The trial court denied his motion, which this Court affirmed. *Sanders v. Commonwealth*, 339 S.W.3d 427 (Ky. 2011). In 2019, Sanders filed yet another motion to vacate his sentence pursuant CR 60.02, seeking to have his prior RCr 11.42 proceedings reopened in light of this Court's decision in *Conley*. Sanders claims that under *Conley*, his trial counsel was ineffective for allowing KCPC to evaluate him and for not obtaining another – or better – independent mental health expert. According to Sanders, the *Conley* decision disavowed the legal basis for this Court's prior ruling rejecting this claim, thereby providing grounds for reopening his case.

The trial court denied Sanders' motion to reopen, noting that his claim concerning his trial counsel's performance had been fully litigated and

4

determined by this Court not to have been in error or to have resulted in ineffective assistance of counsel. The trial court further noted that even if Sanders had received the assistance of an additional mental health expert, the jury may not have been persuaded by that expert's testimony either. Sanders now appeals the trial court's denial of his motion to reopen.

## II. Standard of Review

To be entitled to relief pursuant to CR 60.02, a movant must "affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief." *Foley v. Commonwealth*, 425 S.W.3d 880, 885 (Ky. 2014) (quoting *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997)). CR 60.02 is an extraordinary remedy and the standard for granting a motion is extremely high. *Id.* To reverse a lower court's ruling on a CR 60.02 motion, the appellant must show some "flagrant miscarriage of justice." *Id.* at 886 (quoting *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983)).

Moreover, "CR 60.02 is not a separate avenue of appeal to be pursued in addition to other remedies, but is available only to raise issues which cannot be raised in other proceedings." *McQueen*, 948 S.W.2d at 416. Appellate courts review the denial of a CR 60.02 motion for an abuse of discretion. *Foley*, 425 S.W.3d at 886. "The test for abuse of discretion is whether the trial

court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*[4]

### III. Analysis

Sanders argues that under *Conley*, he was entitled to an additional independent mental health expert. He further contends that *Conley* created new law in this regard, which he asserts should apply retroactively to his case. We disagree.

In *Conley*, this Court held that the trial court's denial of an *indigent* defendant's initial request for funding for an independent mental health expert, and instead ordering that a criminal responsibility examination be conducted by KCPC, violated the defendant's constitutional right to the appointment of an independent mental health professional. 599 S.W.3d at 765. We stated that "if sanity at the time of the offense is to be a significant factor at trial, the state must, at a minimum, assure the defendant access to a competent mental health expert who will conduct an appropriate examination and assist in evaluation, preparation and presentation of the defense." *Id.* (quoting *Binion v. Commonwealth*, 891 S.W.2d 383, 385 (Ky. 1995), citing *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) (holding indigents have a right under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the same access to

---

[4] Sanders urges this Court to limit the application of the abuse of discretion standard for reviewing CR 60.02 motions and instead apply a de novo standard of review to what he argues is a mixed bag of factual findings and legal findings by the trial court. However, our abuse of discretion standard is well-settled with regards to CR 60.02 rulings and Sanders offers no compelling justification to disturb it.

necessary mental health expert assistance as a person of means)). The *Conley* court noted that KCPC, by its own admission and policy, is not an institution that could fulfill that duty; that is, to act in the capacity of a defense expert witness. *Id.* Because Conley's sanity was at issue from the start of the case, this Court ruled that the trial court's initial denial of the defendant's request for funding for a mental health expert constituted an abuse of discretion, in part due to the collateral errors resulting therefrom.[5] *Id.*

*Conley* clarified that the discretion afforded to trial courts under KRS 31.185 to authorize funding for an indigent defendant to secure the services of an independent mental health examiner is not unfettered under *Ake* and *Binion*. *Id.* at 766. This Court did not create a new standard in *Conley*; we simply held that under the facts of that case, the trial court's exercise of its discretion was an abuse thereof. Importantly, KRS 31.185(1) applies to "[a]ny defending attorney operating under the provisions of this chapter" – Chapter 31

---

[5] The trial court's error in initially denying funds to Conley was compounded by the derivative errors that followed. While the trial court eventually granted funds to Conley to retain Dr. Conner, an independent mental health expert, because the trial court at the same time permitted the Commonwealth to commandeer Dr. Trivette, the KCPC evaluator, to testify against Conley, the trial court's later ruling granting Conley funds did not fully "get the train back on the tracks" because of the side-switching error, which led to other consequential errors. 599 S.W.3d at 767–68. Further, the error in *Conley* was constitutionally significant because it deprived Conley of the same advantage as would be available to a person of means, as mandated by *Ake*. *Id.* "A person of means would not have been subjected to the initial denial of funds or being sent to an institution that declared it could not act as an independent defense expert and would not have been subjected to the side-switching." *Id.* These facts are substantially different from the case at hand.

7

– which governs the Department of Public Advocacy. Since Sanders was represented by private counsel, *Conley* is simply inapplicable.

With respect to the competency of Sanders' counsel, we previously concluded that "Sanders had access to qualified mental health experts to establish his insanity defense. His complaints about ineffectiveness are without merit." *Sanders*, 89 S.W.3d at 388. Indeed, we found nothing problematic in Dr. Cooke's testimony, or Sanders' counsel's retention of his services, noting that "[t]he fact that an additional evaluation might be beneficial to the defense does not add credibility to his claim. . . . The jury rejected the opinion offered by Dr. Cooke and there is no reason to believe they would have accepted a similar opinion simply because it came from a different defense expert." *Id.*

Thus, we affirm the trial court's ruling that *Conley* does not justify reopening Sanders' case under CR 60.02. And as this Court has already resolved Sanders' claims, we likewise agree with the trial court that Sanders is barred from further litigating this issue. *See, e.g., St. Clair v. Commonwealth*, 451 S.W.3d 597, 612 (Ky. 2014) (holding that "issues decided in earlier appeals should not be revisited in subsequent ones[]") (quoting *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010) (stating that the law-of-the-case doctrine "refers to a handful of related rules giving substance to the general principle that a court addressing later phases of a lawsuit should not reopen questions decided by that court or by a higher court during earlier phases of the litigation[]") (citation omitted)).

## IV.    Conclusion

For the foregoing reasons, we affirm the order of the Madison Circuit Court denying Sanders' CR 60.02 motion to reopen.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

David Michael Barron
Kentucky Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Stephanie Lynne McKeehan
Assistant Attorney General