**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Roy STACEY, Appellee.**

**No. 2004–SC–0358–DG.**

Supreme Court of Kentucky.

Nov. 23, 2005.

Gregory D. Stumbo, Attorney General of Kentucky, Michael L. Harned, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellant.

David J. Harris, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice
JOHNSTONE.

In August 1999, Roy Stacey pled guilty in the Nelson Circuit Court to five counts of third-degree rape, five counts of third-degree sodomy, and to being a first-degree persistent felony offender. Pursuant to a plea agreement, Stacey was sentenced to ten concurrent five-year terms, enhanced to fifteen years' imprisonment by virtue of the PFO charge. Stacey's sentence was also ordered to run concurrently with three prior Bullitt County convictions, as well as a sentence on another contemporaneous Jefferson County charge.

During the plea colloquy, Stacey stated under oath that he understood the charges against him. When asked if he was under the influence of alcohol or medication, Stacey responded that he had only taken medication for chemotherapy, but it would not affect his ability to think or reason. Further, Stacey divulged that he had, in the distant past, suffered from some "alcohol-related" psychological and emotional problems. Based on the colloquy, the trial court found Stacey competent to enter a guilty plea. The trial court thereafter informed Stacey of his constitutional rights and asked him if he was waiving those rights by pleading guilty. Stacey responded in the affirmative. The trial court ruled that Stacey's plea was intelligent, knowing, and voluntary.

Stacey did not file a direct appeal of his convictions. However, on May 8, 2003, he filed a motion for post-conviction relief pursuant to RCr 11.42. Stacey alleged that his August 1999 guilty plea was invalid because of a diminished mental capacity resulting from head injuries he sustained in a 1997 automobile accident. In support of his claim, Stacey relied upon a report produced by a licensed clinical psychologist in conjunction with a personal injury claim arising out of the automobile accident. The report, dated approximately two months prior to Stacey's guilty plea, noted that he suffered from a "vast array of neuropsychological deficits." Thus, while conceding that the motion was filed outside of the three-year statute of limitations contained in RCr 11.42(10), Stacey argued

that his non-compliance should be excused due to "ongoing incompetency."

The trial court denied Stacey's motion as "time barred," on the grounds that it was filed over six months beyond the statute of limitations, and that the pre-plea "unverified neurological report ... was known to [Stacey] both at the time of his pleas as well as at final sentencing." The trial court also denied Stacey's requests for counsel and an evidentiary hearing.

The Court of Appeals subsequently vacated the trial court's order, holding that Stacey produced sufficient evidence to "raise an evidentiary issue concerning whether [he] suffered from an on-going mental incapacity following his guilty plea such that the statute of limitations contained in RCr 11.42(10) should be tolled." The Court of Appeals further ordered:

> Upon remand, the trial court should conduct an evidentiary hearing to determine whether Stacey suffered from a mental incapacity, or an "unsound mind," such that during the three year limitations period, he was unable to understand or appreciate the factual basis for his present RCr 11.42 motion; and, considering his mental state, whether he could have ascertained the factual basis with the exercise of due diligence.

This Court thereafter granted the Commonwealth's motion for discretionary review. For the reasons discussed herein, we reverse the decision of the Court of Appeals and reinstate the trial court's order denying Stacey's motion for post-conviction relief pursuant to RCr 11.42

█ The issue to be considered is not whether Stacey was, in fact, competent at the time he entered his plea, but rather whether he alleged sufficient grounds in his untimely RCr 11.42 motion to warrant an evidentiary hearing. RCr 11.42(10) provides, in pertinent part:

> Any motion under this rule shall be filed within three years after the judgment becomes final, unless the motion alleges and the movant proves either:
>
> (a) that the facts upon which the claim is predicated were unknown to the movant and could not have been ascertained by the exercise of due diligence[.]

Because there was no appeal taken, the trial court's judgment became final on November 21, 1999. Thus, Stacey's RCr 11.42 motion, filed on May 8, 2003, was clearly outside the three-year statute of limitations.

Notwithstanding, the Court of Appeals, focusing primarily on the psychologist's findings that Stacey was "permanently mentally disabled" and that the disability interfered "with every aspect of his life," was persuaded that Stacey was entitled to an evidentiary hearing on whether his alleged mental circumstances fit within the RCr 11.42(10)(a) tolling provision:

> The letter lends some credibility to Stacey's allegation that the facts upon which his claim is predicated (i.e., that he was incompetent to enter a guilty plea because of a mental incapacity) were unknown to him (because of his mental incapacity) and could not have been ascertained by the exercise of due diligence (because he was unable to exercise due diligence because of this mental incapacity).

The Court of Appeals further concluded that, because the determination of whether the statute of limitations should be tolled is a question of fact, the trial court erred in refusing to hold an evidentiary hearing. We disagree.

While this issue has not previously been addressed by Kentucky courts, we find the facts herein similar to those presented in the Ohio Court of Appeals' decision, *State*

*v. Burke.*[1] Burke pled guilty in 1995 to one count of burglary, and was sentenced to four to fifteen years imprisonment. In April 2002, he filed a petition for post-conviction relief, which was dismissed as time barred under Ohio's post-conviction statute.[2]

On appeal, Burke relied on a provision similar to RCr 11.42(10)(a), which tolls the statute of limitations if "[t]he petitioner shows that [he] was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief." Ohio Rev.Code § 2953.23(a)(1). Burke alleged that he fell within the ambit of the exception because he was "developmentally disabled" and suffered from "emotional mental illness" which prevented him from understanding the time requirements of the statute. In support of his claim, Burke relied upon a "psycho-educational report" dated three years prior to his guilty plea.

In rejecting Burke's argument, the Ohio Court of Appeals held:

> [T]he report cited by defendant is dated more than three years prior to the time defendant entered his guilty plea, and thus does not address his mental status or competency at the time of his sentence or during the statutory time period under which he was required to file a petition for post-conviction relief. Further, defendant has not demonstrated how he was "unavoidably prevented"

from discovering that he suffered from a developmental disability. Even assuming that defendant suffers from a developmental disability, the record contains no evidence as to how such disability hindered his ability to comply with the statutory requirements for bringing a petition for post-conviction relief. Nor does a claim of mental incompetence constitute a per se reason to toll a statute of limitations.

*Id.* at 3 (citation omitted).

We are convinced that the Ohio court's logic applies equally to the facts presented herein. The neurological report, which notably was prepared in anticipation of civil litigation, did not address Stacey's mental status at the time of his plea or during the statutory time period in which he was required to file the RCr 11.42 motion. Contrary to the Court of Appeals' decision, Stacey has not presented any evidence that his alleged mental incapacity was either unknown to him or could not have been ascertained by him by the exercise of due diligence during the three-year limitations period of RCr 11.42(10). Rather, the report was known to Stacey at both the time of his plea and at the time of sentencing. Even assuming that Stacey does suffer from some level of mental impairment, the record is devoid of any evidence as to how such impairment prevented him from complying with the three-year limitations requirement.[3] We agree with the Ohio

---

1. 2002 WL 31771254 (Ohio App. 10 Dist. 2002). (While not reported in N.E.2d, Rule 4(b) of the Ohio Supreme Court Rules for the reporting of opinions provides, "All Court of Appeals' opinions issued after the effective date (May 1, 2002) of these rules may be cited as legal authority and weighed as deemed appropriate by the Courts.")

2. Effective September 21, 1995, Ohio Rev. Code § 2953.21 was amended to require that a petition for post-conviction relief under subsection (a)(1) be filed no later than 180 days

after the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction, or if no appeal is taken, no later than 180 days after the expiration of the time for filing the appeal. However, since Burke was sentenced prior to the date of the amendment, he had one year from the date of said amendment.

3. It is of interest to note that not only does Stacey fail to offer any evidence of how his alleged impairment was unknown or undiscoverable to him during the three-year time

court that a claim of mental incompetence does not constitute a *per se* reason to toll a statute of limitations.

■ Nor do we find any merit in Stacey's argument that the three-year limitations period should be excused under the principle of equitable tolling. Stacey relies on the Court of Appeals' analogy of the instant situation to the provisions of KRS 413.170(1), which toll the statute of limitations in civil cases if the plaintiff was, at the time the cause of action accrued, "of unsound mind." The Court noted that within the context of KRS 413.170(1), the term "unsound mind" has been interpreted to mean that the person claiming the disability "must show that he has been rendered incapable of managing his own affairs." *Southeastern Kentucky Baptist Hospital v. Gaylor*, 756 S.W.2d 467 (Ky. 1988). From this rationale, Stacey contends that the Court of Appeals acknowledged that due process and fundamental fairness supports the application of equitable tolling to a situation such as his.

Although this Court has not considered the concept of equitable tolling with respect to state post-conviction proceedings, the Sixth Circuit Court of Appeals has held that the Anti–Terrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations for filing a habeas corpus petition is subject to the doctrine of equitable tolling. *Dunlap v. United States*, 250 F.3d 1001 (6th Cir.2001). However, the critical inquiry remains whether the circumstances preventing a petitioner from making a timely filing were both beyond the petitioner's control and unavoidable despite due diligence. *Id.* at 1010.

Without expressly determining whether and under what circumstances equitable tolling may apply to an RCr 11.42 motion, we conclude that Stacey simply has not offered any evidence to support equitable relief. Again, Stacey was required to offer some proof that the facts predicating his claim for relief were either unknown to him or undiscoverable by the exercise of due diligence. As the psychologist's report pre-dates Stacey's guilty plea, the record clearly refutes any contention that Stacey was unaware of his condition or claim for relief during the three-year statute of limitations for filing the RCr 11.42 motion. As such, the trial court did not err in either denying the motion as time barred or in refusing to hold an evidentiary hearing. *Fraser v. Commonwealth*, 59 S.W.3d 448 (Ky.2001); *Stanford v. Commonwealth*, 854 S.W.2d 742 (Ky.1993), *cert. denied*, 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994).

For the foregoing reasons, we reverse the decision of the Court of Appeals and reinstate the order of the Nelson Circuit Court denying Stacey's motion for post-conviction relief pursuant to RCr 11.42

COOPER, GRAVES, ROACH, and WINTERSHEIMER, JJ., concur.

SCOTT, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

Dissenting Opinion by Justice SCOTT.

I must respectfully dissent from the majority.

What we are doing here today is disposing of an RCr 11.42 motion as untimely according to the language of the rule. Ordinarily, I would agree with this disposition without reservation. But here, I can-

---

period, but counsel during oral argument was unable to offer any evidence of a change in Stacey's mental health since that time such

that he has now become aware of his "ongoing mental incapacity."

not ignore the circumstances surrounding Stacey prior to, during, and after his entry of his plea of guilt.

In this case, we are not simply denying an untimely collateral attack on a conviction. We are summarily disposing of a claim directly involving Stacey's constitutional right to due process.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). These are the Fifth and Sixth Amendment rights (1) against self-incrimination, (2) to trial by jury, and (3) to confront one's accusers. *Id., e.g., Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The United States Supreme Court has further held that for this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known privilege." *Id.* (quoting *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)); *See also Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Stacey suffered brain injuries in an automobile accident prior to his plea. There was medical evidence available to establish that Stacey had suffered permanent brain damage from which he would never recover. The injury to his brain was sufficient enough to prompt a report from the Department of Corrections suggesting that Stacey's "status" would not change "in regards to treatment" in the sex offender program, as a direct result of his injury, and that he should not be penalized as a result. The question becomes whether Stacey had the capability of understanding that he was brain damaged and whether he could, despite the brain damage, knowingly, intelligently, and voluntarily waive his right to a trial by jury.

The majority points out that the first report of his brain damage was available to him prior to the entry of the plea but he entered the plea nonetheless. They also point out that he knew of his injury for the entire three years thereafter but did not file his RCr 11.42 motion until six months or so after the running of the statute of limitations. Maybe this is so, but the gravity of the denial of due process is such that I cannot deny Stacey the opportunity, in the form of an evidentiary hearing before the trial court, to make the case that because of his brain injury (which is documented) he did not, and could not, through the exercise of due diligence, discover that he was unable to knowingly, intelligently, and voluntarily enter a guilty plea. The real question to be ascertained through the hearing is simply did this injury—and the resulting and uncontroverted deficit—keep him from knowing these things.

We have valid cause to question whether Stacey possessed this understanding and when an individual's due process rights are in the balance, we must err on the side of caution. Maybe he did know what he was doing—but maybe he did not. An evidentiary hearing would answer that question. We are sworn to uphold the Constitution of the United States and that of this Commonwealth wherein all persons are guaranteed the right to due process under the law. As a consequence thereof, we are bound to ensure that Roy Stacey did, in fact, knowingly, intelligently, and voluntarily enter his guilty plea.

The Court of Appeals did not make that determination one way or another—they simply did what was constitutionally required of them and remanded the question to the trial court for a determination based

upon the evidence. The guarantee of due process requires we do as much.

LAMBERT, C.J., joins this dissent.