RENDERED: NOVEMBER 26, 2008
TO BE PUBLISHED

# Supreme Court of Kentucky

2006-SC-000653-DG
2007-SC-000203-DG

DATE 2/19/09 EsiftGrowth DC.

COMMONWEALTH OF KENTUCKY          APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2004-CA-001534-MR
McCRACKEN CIRCUIT COURT NO. 97-CR-00350

MICHAEL CARNEAL          APPELLEE/CROSS-APPELLANT

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**AFFIRMING IN PART AND REVERSING IN PART**

The Commonwealth appeals from a decision of the Court of Appeals reversing the McCracken Circuit Court's denial of Michael Carneal's motion for post-conviction relief. In that motion, Carneal moved the trial court to allow him to withdraw his guilty plea on the grounds of ineffective assistance of counsel, and that new, previously unavailable psychological information called into question his competency at both the time of his plea and the time of the offense. The Court of Appeals reversed, and this Court granted discretionary review. For the reasons set forth herein, we affirm in part and reverse in part.

## Background

Carneal admitted to stealing several guns from a friend's garage and hiding them for three days in his bedroom. On the morning of December 1, 1997, Carneal, who was then fourteen-years old, took the guns to school and

opened fire on students congregated in the main lobby, many of whom were participating in a prayer circle. He killed three of his classmates and wounded five others, two of whom were very seriously and permanently disabled.

On October 5, 1998, Carneal pled guilty but mentally ill to three counts of murder, five counts of attempted murder, and first-degree burglary. He entered his guilty plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970). He received a combined sentence of life in prison without the possibility of parole for at least twenty-five years. At the time his judgment of sentence was entered on December 21, 1998, Carneal was fifteen-years old and, therefore, placed in a juvenile facility. Following an 18-year-old hearing on June 1, 2001, Carneal was transferred to the custody of adult corrections. On June 1, 2004, Carneal moved for relief from his sentence.

Carneal advances four theories supporting a withdrawal of his guilty plea. Under RCr 10.02 and 10.06, he argues that newly discovered evidence calls into question his competency at the time of the offense. Second, he raises his competency to plead guilty as a basis for RCr 11.42 relief. Third, Carneal claims his trial counsel was incompetent for advising him to plead guilty. This claim is also brought pursuant to RCr 11.42. Finally, Carneal moves for relief pursuant to CR 60.02(f) on the ground that new information about his mental state at the time of sentencing demands the extraordinary relief contemplated by the rule. He has submitted two psychological evaluations to support the motion.

The thrust of Carneal's post-conviction motion is that he was misdiagnosed when evaluated following the crime. Prior to his guilty plea,

2

Carneal was evaluated by five mental health professionals, two of whom were hired by defense counsel. All five concluded that Carneal was mentally competent at the time of the offense; that is, he had the capacity to either appreciate the criminality of his conduct or to conform such conduct to the requirements of law. KRS 504.020(1). Their opinions of Carneal's mental condition, however, varied. The Commonwealth's experts, who included two psychiatrists and one psychologist, submitted a combined report that indicated Carneal was maladjusted and prone to paranoia, anxiety, and depression. The report offered no formal clinical diagnosis of a mental disorder.

The defense experts, Dr. Cornell and Dr. Schetky, diagnosed Carneal with schizotypal personality disorder and depression. Schizotypal personality disorder is defined as "a pervasive pattern of social and interpersonal deficits marked by acute discomfort with, and reduced capacity for, close relationships as well as by cognitive or perceptual distortions and eccentricities of behavior, beginning by early adulthood and present in a variety of contexts." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th ed. 2000). As explained by Dr. Cornell in his 1998 evaluation, the signs of schizotypal personality disorder may be an indication of underlying or emerging schizophrenia, a much more severe mental illness. In fact, he specifically stated, "It is possible that Michael is in the early states of Schizophrenia or Schizoaffective Disorder, which usually develop in early adulthood, but such a diagnosis would only be confirmed if he exhibits more clear-cut and unequivocal symptoms of psychosis, accompanied by a substantial decline in his day-to-day functioning." Dr. Cornell did not render

3

the more severe diagnosis, however, because Carneal had not reported any auditory or visual hallucinations or any psychotic episodes.

After these evaluations were conducted, Carneal agreed to enter an Alford plea of guilty but mentally ill to all charges. The trial court appointed Dr. Cornell to further evaluate Carneal concerning his competency to plead guilty. At sentencing, Dr. Cornell testified that Carneal understood the nature of his crimes, the proceedings against him, and the consequences of his guilty plea. The trial court deemed him competent to enter the plea.

Dr. Cornell and Dr. Schetky re-evaluated Carneal in 2004. Carneal claimed that, as a result of taking more powerful antipsychotic medication, his reality testing was greatly improved, and he was better able to convey details concerning his mental state in 1997 and 1998. He recounted a history of psychotic symptoms, complex visual and auditory hallucinations, and paranoia that began about six months prior to the shootings. He detailed his delusional thinking at the time of the crime and the auditory hallucinations that were directing his actions. Carneal explained that, at the time of his sentencing, he was unable to reveal the delusions because of threatening auditory hallucinations which he feared.

Based on these new revelations, Dr. Cornell and Dr. Schetky revised their previous diagnosis. Dr. Schetky concluded that, at the time of the offense, Carneal was experiencing the onset of schizophrenia and was unable to reveal the extent of his delusions because he believed them to be true. She concluded that Carneal lacked the substantial capacity to appreciate the criminality of his conduct, and that he was unable to conform his conduct to

4

the requirements of the law because he was responding to command hallucinations. In her 2004 evaluation, Dr. Schetky did not offer any opinion about Carneal's competency to stand trial in 1998.

Dr. Cornell, likewise, revised his diagnosis to one of full-blown schizophrenia. He stated that "had I known of [Carneal's] auditory hallucinations and their effect on his judgment and behavior, I would have recommended that he be found incompetent to stand trial." Further, Dr. Cornell concluded that "there is now sufficient evidence to support an insanity defense."

The trial court denied the motion as untimely, summarily noting that Carneal's claims were "otherwise refuted by the record." No evidentiary hearing was conducted.

The Court of Appeals affirmed the trial court's dismissal of Carneal's CR 60.02 and RCr 10 claims as untimely. It reversed the trial court with respect to the RCr 11.42 claim, however, determining that the three-year limitations period of subsection (10) did not begin to run until Carneal's 18-year-old hearing in 2001. Further, Carneal had presented sufficient evidence to create a real and substantial doubt about his competency to plead guilty, warranting an evidentiary hearing. The Court of Appeals remanded the matter to the McCracken Circuit Court to determine the feasibility of a retrospective competency hearing. The Commonwealth appealed and this Court granted discretionary review; Carneal cross-appealed the issue of the timeliness of his RCr 10 and CR 60.02 claims.

5

## RCr 11.42 Claims

*Timeliness*

We turn first to Carneal's claims brought pursuant to RCr 11.42. Carneal claims that he was mentally incompetent to plead guilty, and that his counsel was incompetent for advising him to accept the plea agreement. Generally, RCr 11.42 claims must be brought "within three years after the judgment becomes final." RCr 11.42(10). According to Carneal, this statute of limitations was triggered when he was transferred to adult custody following his 18-year-old hearing. Alternatively, he advances two arguments in favor of tolling the three-year limitation. Finally, Carneal argues that this statute of limitations is inapplicable to the motion because its factual basis was "unknown to the movant and could not have been ascertained by the exercise of due diligence." RCr 11.42(10)(a). If true, the general three-year limitation on RCr 11.42 motions does not apply.

*Finality of Judgment*

In order to determine if the RCr 11.42 claim was timely, we must identify when Carneal's sentencing judgment became final. The Commonwealth argues that final judgment occurred in 1998, when the trial court sentenced Carneal to life without the possibility of parole for twenty-five years. Carneal contends final judgment occurred when he was transferred to adult custody in 2001, following the hearing held pursuant to KRS 640.030(2), commonly called the "18-year-old hearing."

This Court has yet to squarely address this issue in a published opinion. In Turner v. Commonwealth, an unpublished opinion, we considered a

6

youthful offender's untimely RCr 11.42 motion challenging the validity of his guilty plea. 2004 WL 315154 (Ky. 2004). "[W]e thus hold that the court's judgment of conviction [and] sentence was a final judgment for RCr 11.42 purposes notwithstanding the possibility that the trial court [could] have modified the terms of Turner's sentence at a subsequent KRS 640.030 proceeding." Id. at 2. No further analysis was offered, however.

The Sixth Circuit Court of Appeals recently addressed the issue in Jennings v. Morgan, 2007 WL 4292038 (6th Cir. 2007), though in the context of a federal habeas corpus petition brought pursuant to 28 U.S.C. §§ 2254 and 2244(d)(1). Interpreting the U.S. Supreme Court ruling in Burton v. Stewart, 549 U.S. 147 (2007), the Sixth Circuit held that Jennings' conviction and sentence as a youthful offender was not final for purposes of federal post-conviction relief until the 18-year-old hearing was held. We disagree with this application of Burton in the context of Kentucky's post-conviction statutes. In Burton, a Washington state case, it was held that the one-year grace period established by the Antiterrorism and Effective Death Penalty Act ("AEDPA") did not begin to run until Burton's conviction *and* sentence became final. Id. at ____. Accordingly, where the Washington Court of Appeals remanded Burton's case for re-sentencing, the AEDPA statute of limitations did not begin to run until all direct appeals of the *new* sentence were exhausted. We do not believe the 18-year-old hearing mandated by KRS 640.030(2) is comparable, in purpose or effect, to the re-sentencing proceedings for an adult offender.

"A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under

7

Rule 54.02." CR 54.01. "Final judgment in a criminal case means sentence. The sentence is the judgment." Burton v. Stewart, 549 U.S. 147, ____ (quoting Berman v. United States, 302 U.S. 211, 212 (1937)). Carneal was sentenced on December 16, 1998, as a youthful offender pursuant to KRS 635.020(4). At that point, all issues relating to Carneal's guilt and his sentence were adjudicated. Moreover, though Carneal entered an unconditional guilty plea, this order is a final and appealable judgment from which youthful offenders customarily file matter-of-right appeals. See e.g. Murphy v. Commonwealth, 50 S.W.3d 173 (Ky. 2001); Shepherd v. Commonwealth, 251 S.W.3d 309 (Ky. 2008).

We are unconvinced that the statutorily mandated 18-year-old hearing is final sentencing, as Carneal argues. Under the 2001 version of KRS 640.030, the trial court had the authority to place a youthful offender on probation or conditional discharge, to return the youthful offender to juvenile custody to complete a treatment plan whereupon he would be finally discharged, or to order transfer to adult corrections. KRS 640.030(2). The circuit court did not have authority to modify, alter, or otherwise dismiss the underlying sentence. Cf. KRS 610.120(1) (juvenile disposition orders "may be continued or terminated at any time prior to expiration on the court's own initiative or on motion").

In Carneal's case, the trial court was even more limited. Carneal had accepted a sentence of life without the possibility of parole for twenty-five years. This sentence is permissible under KRS 640.040(3) because the limitations on probation and parole were imposed by the sentence, and not as

8

a function of KRS 532.060 as prohibited by the statute.[1]  Therefore, at Carneal's 18-year-old hearing, the trial court did not have the option of ordering probation or conditional discharge, nor did it have the ability to return him to juvenile custody to complete a treatment program whereupon he would be finally discharged.  Indeed, by virtue of the sentence itself, the trial court's only option was to transfer Carneal to adult custody.[2]

The 18-year-old hearing is simply a "second look" at the *manner* in which the youthful offender is serving his sentence and provides the trial court the opportunity to consider alternative methods of fulfilling the sentence, other than simply transferring the youthful offender to adult corrections.  Indeed, this Court has described the provisions of KRS 640.040 as "ameliorative."  Britt v. Commonwealth, 965 S.W.2d 147, 149 (Ky. 1998).  It is not a "re-sentencing" procedure in the strict sense, as nothing in the language of KRS 640.040 renders the original sentence void.

Furthermore, to declare a youthful offender's 18-year-old hearing the final judgment unduly restricts the juvenile's ability to collaterally attack the

---

[1] Cf. Commonwealth v. Merriman, ___ S.W.3d ___ (Ky. 2008).  In Merriman, we held that the violent offender statute, KRS 439.3401, does not apply to juveniles who are adjudicated youthful offenders.  KRS 640.040(3) states that no youthful offender "shall be subject to limitations on probation, parole or conditional discharge as provided for in KRS 533.060."  We reasoned that the prohibited dispositions found at KRS 640.040(3) include application of the violent offender statute to youthful offenders.  Here, however, Carneal's restriction on probation, conditional discharge, and parole were not imposed by virtue of KRS 533.060 or KRS 439.3401; the restriction was imposed by the sentence itself.  We have recognized that life without the possibility of parole for twenty-five years is an allowable sentence for youthful offenders.  See Shepherd v. Commonwealth, 251 S.W.3d 309 (Ky. 2008).

[2] This circumstance is unique to Carneal's case as the statute has since been revised to offer the sentencing court more alternatives.  Section (2)(b) of the statute allows the trial court to send a youthful offender back to juvenile custody for the completion of a treatment program.  However, pursuant to legislative changes in 2001, upon completion of the program, the youthful offender is no longer discharged.  Rather, he is returned to the trial court "for a determination under paragraph (a) or (c) of this subsection."

conviction in a timely manner. Conversely, such a rule would impair meaningful review, as the trial court would be required to consider matters germane only to the original sentencing up to three years *after* the 18-year-old hearing is complete. Indeed, the claims of error underlying Carneal's motion solely concern his original sentencing proceedings, yet were raised six years after he pled guilty. Youthful offenders, in almost every procedural aspect, are treated as adult offenders: "If convicted in the Circuit Court, [the youthful offender] shall be subject to the same penalties as an adult offender[.]" KRS 635.020(4). It follows that they should enjoy the same rights as adult criminal defendants, including the ability to collaterally attack the sentence in a timely manner. See Jefferson Cty. Dep't. for Human Services v. Carter, 795 S.W.2d 59, 61 (Ky. 1990) ("If the juvenile court finds that an individual should be proceeded against as a "youthful offender" the case is transferred to circuit court where all of the constitutional rights guaranteed to adults come into play.").

We hold that for purposes of post-conviction relief, a youthful offender's original sentencing order is a final judgment.[3] Therefore, Carneal's RCr 11.42 motion is untimely, as it was filed more than three years after his sentencing. Nonetheless, Carneal argues, and the Court of Appeals agreed, that the time for filing his RCr 11.42 action was tolled while he remained a minor. Carneal also argued to the trial court that equitable tolling was required because he suffered from an ongoing mental incompetence.

---

[3] This holding is limited to the sentencing of youthful offenders. We do not address the separate issue of whether a juvenile disposition is a final judgment subject to collateral attack or if RCr 11.42 is available for that purpose.

10

*Equitable Tolling During Minority*

The Court of Appeals held that regardless of when the statute of limitations was triggered, it was tolled during Carneal's minority. This argument was not presented to the trial court in Carneal's motion. Rather, with respect to the ineffective assistance of counsel claim, Carneal argued that tolling was necessary because he retained trial counsel until after his 18-year-old hearing, at which point new counsel was retained and he became aware of the prior deficiency. On appeal, this argument has shifted focus from the ongoing attorney-client relationship as the reason for tolling, to Carneal's age. Insofar as Carneal requests tolling of the statute of limitations for his RCr 11.42 claim of incompetence to stand trial due to minority, we will not consider these arguments on appeal as they were not presented to the trial court. Kennedy v. Commonwealth, 544 S.W.2d 219, 222 (Ky. 1976). The holding of the Court of Appeals that the RCr 11.42(10) statute of limitations was tolled until Carneal attained the age of eighteen is reversed.

*Equitable Tolling During Ongoing Mental Incompetence*

The trial court also rejected Carneal's argument that his ongoing mental incompetence saved an otherwise untimely RCr 11.42 motion. This Court has recognized the doctrine of equitable tolling as applicable to post-conviction motions. Robertson v. Commonwealth, 177 S.W.3d 789, 792 (Ky. 2005). While an ongoing mental incompetence may warrant equitable tolling, "a claim of mental incompetence does not constitute a *per se* reason to toll a statute of limitations." Commonwealth v. Stacey, 177 S.W.3d 813, 817 (Ky. 2005). Rather, the "critical inquiry remains whether the circumstances preventing a

11

petitioner from making a timely filing were both beyond the petitioner's control and unavoidable despite due diligence." Id. Carneal has not satisfied this burden.

Dr. Cornell's report concerns Carneal's mental state at the time of the offense and the sentencing, with some analysis of his current mental condition. What reference is made to Carneal's mental condition during the intervening six years does not support a finding of ongoing mental incompetence. Carneal has been medicated since 1999, and all psychological reports indicate that the intensity of his mental disorder ebbs and flows, logically indicating at least temporary periods of mental competency. Reports filed at the 18-year-old hearing indicate Carneal's mental condition stabilized during his juvenile detention, that he was able to meaningfully participate in group therapy, and that he earned a high school diploma and GED. In adult corrections, Carneal has been treated with more effective medication and has earned credits towards an associate's degree.

In his report, Dr. Cornell explains that "schizophrenia is a severe mental illness that is characterized by episodes of psychosis followed [by] less severe periods when the patient may have residual symptoms or in some cases, relatively normal functioning." As is consistent with the disorder, Carneal has experienced temporary periods of mental incompetence since the time of the offense, but has not been totally incompetent for the uninterrupted duration. He has been aware of his mental disability for many years and has actively sought treatment. In light of Carneal's intermittent competence, we are unconvinced that his condition prevented compliance with the RCr 11.42 time

12

limitation such that equitable tolling would be appropriate. Further, because the evidence in the record refutes Carneal's claim of an ongoing mental incompetence, an evidentiary hearing on this issue was unnecessary. Stanford v. Commonwealth, 854 S.W.2d 742, 744 (Ky. 1993).

*Claim of Incompetence to Enter Guilty Plea*

Having determined that Carneal's RCr 11.42 motion is untimely, and that insufficient evidence has been presented to toll the three-year statute of limitations, we now must determine if the record establishes that "the facts upon which the claim is predicated were unknown to the movant and could not have been ascertained by the exercise of due diligence[.]" RCr 11.42(10)(a). Carneal argues that he was mentally incompetent at the time of the guilty plea, and that this fact was unknown to him until he was evaluated in 2004 by Dr. Cornell and Dr. Schetky.

The pertinent question is whether the facts presented in the reports (i.e., the recent revelation that he was incompetent to plead guilty) were unknown to Carneal and could not have been ascertained by the exercise of due diligence. The trial court found that the claims were "refuted by the record" and declined to hold an evidentiary hearing. When an RCr 11.42 motion is denied without a hearing, this Court must determine whether there is "a material issue of fact that cannot be conclusively resolved, i.e., conclusively proved or disproved, by an examination of the record." Fraser v. Commonwealth, 59 S.W.3d 448, 452 (Ky. 2001).

An evidentiary hearing was unnecessary, as the record does not support a finding that the facts underlying this motion were unknown to Carneal or

13

could not have been ascertained during the statutory time period. Carneal was aware of a mental deficiency at the time of his guilty plea; indeed, he pled "guilty but mentally ill" to all nine charges. Carneal avoided trial for the express purpose of receiving mental health treatment as soon as possible. Dr. Cornell and Dr. Schetky diagnosed Carneal with schizotypal personality disorder in 1998. While this condition is less severe than their current diagnosis of schizophrenia, it is nonetheless a very grave diagnosis for a fifteen-year-old and certainly put Carneal on notice of his mental condition. In fact, as early as 1999, he was diagnosed with paranoid schizophrenia by his attending psychiatrist and began pharmaceutical therapy for his condition at that time. Considering the numerous sources informing Carneal of his mental condition, we cannot conclude that any alleged incompetence was "unknown" to Carneal or could not have been ascertained through the exercise of due diligence.

Nonetheless, Carneal insists that the true severity of his mental condition was undiscoverable because he was unable to reveal important aspects of it until recently. This argument is a conceptual "Catch-22." The claim that he was unable to ascertain that he was incompetent to plead guilty rests solely on his own disclosures about his own thought processes. Common sense disfavors the conclusion that one's own memories and thoughts are not ascertainable by oneself, except in an extreme circumstance such as a prolonged coma. Carneal has not presented such circumstances. Increased medication has improved his perception of reality and has permitted him to gain some level of personal control over a very debilitating and severe mental

14

condition. This deeper insight, however, does not constitute a fact which was unknown to Carneal, or a fact which he was unable to ascertain prior to 2001. For us to interpret information previously suppressed in Carneal's mind as unknown facts under RCr 11.42(10)(a) would set an explosive precedent. Therefore, his RCr 11.42 motion was untimely.

*Constitutionality of RCr 11.42(10)*

Finally, Carneal challenges the constitutionality of the limitations period of RCr 11.42(10), claiming it violates the doctrine of separation of powers. He argues that RCr 11.42(10) is a substantive law that restricts a petitioner's access to habeas corpus relief, in violation of Sections 16, 26 and 27 of the Kentucky Constitution. Section 16 states that "the privilege of the writ of habeas corpus shall not be suspended unless when, in case of rebellion or invasion, the public safety may require it."

RCr 11.42 does not restrict a petitioner's access to habeas corpus relief pursuant to KRS 419.020 or Section 16 of the Kentucky Constitution. Rather, it exists simultaneously:

> [W]e recognize as the general rule that the RCr 11.42 procedure is adequate for a collateral attack by a prisoner in custody under a judgment which he believes to be defective for one reason or another. But we recognize as an exception that the prompt relief available by writ of habeas corpus remains for a prisoner who can establish in a summary procedure that the judgment by which he is detained is void *ab initio*.

Commonwealth v. Marcum, 873 S.W.2d 207, 211-12 (Ky. 1994). In cases where habeas corpus relief is appropriate, "the existence of RCr 11.42 should not, and shall not, deprive the petitioner of his right to its

use." Id. at 212. The argument that RCr 11.42 is unconstitutional on these grounds is without merit.

*Ineffective Assistance of Counsel Claim*

Carneal also advances a claim of ineffective assistance of counsel as warranting RCr 11.42 relief. He argues trial counsel was ineffective for advising him to accept a plea of "guilty but mentally ill." Carneal claims he accepted the plea agreement in the hopes of receiving immediate mental health treatment, but that a "guilty but mentally ill" plea carries with it no benefits differentiating it from a normal plea of guilty. He insists that counsel was ineffective for not explaining that a "guilty but mentally ill" label is meaningless and had no bearing on the type of medical treatment he would receive in adult corrections.

Regardless of any timeliness issue with respect to this claim, Carneal would not be entitled to relief. The familiar test of ineffective assistance of counsel espoused in Strickland v. Washington contains a "prejudice" prong. 466 U.S. 668, 694 (1984). In the context of guilty pleas, the prejudice prong is satisfied when the defendant shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The record refutes any such conclusion. Having presided over Carneal's guilty plea and his 18-year-old hearing, the trial court was well aware that Carneal expressed no desire to lessen his sentence. As indicated in all the mental health evaluations prior to his plea, Carneal felt incredible remorse and guilt for his crime and believed that he deserved the maximum penalty. His trial counsel

16

indicated to the court the desire of the entire Carneal family that Michael receive treatment as soon as possible, and that a public trial be avoided. The claim of ineffective assistance of counsel was properly rejected.

### RCr 10.02 and 10.06 Motion for a New Trial

Carneal moved for a new trial pursuant to RCr 10.02 and 10.06 on the ground that he was mentally incompetent at the time of the shootings, as established by the reports of Dr. Cornell and Dr. Schetky. Motions for a new trial brought pursuant to RCr 10.02 and 10.06 must be "served not later five (5) days after return of the verdict." Claims premised on newly discovered evidence may be brought within one year of the judgment, or at a later time if the trial court finds that "good cause so permits." RCr 10.06(1). Carneal argues that such good cause exists. Though not expressly stated, the trial court evidently concluded that good cause did not exist to extend the time period for the motion. The decision to grant a new trial lies within the sound discretion of the trial court, and there must be a showing that this discretion was abused to warrant reversal. Foley v. Commonwealth, 55 S.W.3d 809 (Ky. 2000).

"[I]n order for newly discovered evidence to support a motion for a new trial it must be 'of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted.'" Commonwealth v. Harris, 250 S.W.3d 637, 640-41 (Ky. 2008), quoting Jennings v. Commonwealth, 380 S.W.2d 284, 285-86 (Ky. 1964). "Further, a motion for new trial based upon newly discovered evidence must be accompanied by an affidavit showing that Appellant exercised

17

sufficient diligence to obtain the evidence prior to his trial." Collins v. Commonwealth, 951 S.W.2d 569, 576 (Ky. 1997). Carneal's motion for a new trial challenges his competency at the time of the offense, as opposed to his RCr 11.42 motion, which is directed towards his competency to plead guilty. However, both motions fail for the same reason – a lack of diligence in discovering the supposed new evidence.

We look to the factually analogous case of United States v. Allen, 554 F.2d 398 (10th Cir. 1977). There, the trial court rejected a petition for a new trial on the ground that new psychiatric reports declaring Allen insane at the time of the offense were not previously undiscoverable. Prior to trial, questions were raised about Allen's competency to stand trial and his competency at the time of the offense. His treating psychiatrist submitted a pre-trial evaluation diagnosing Allen with "manic depressive reaction" which caused intermittent periods of depression and an inability to function normally. A psychiatrist who evaluated Allen five months after trial, however, opined that he suffered from "schizophrenic reaction" that involved a "disabling psychotic process." Further, the new evaluation indicated that Allen's failure to highlight his illness to counsel was the result of the illness itself. The trial court denied the petition, concluding that the severity of Allen's mental condition could have been ascertained by the exercise of due diligence prior to trial.

In upholding the trial court, the Tenth Circuit Court of Appeals did not challenge the validity of the new psychiatric evaluations: "It is true that a factual basis for a substantial insanity defense was developed in the post-trial affidavits of Dr. Martin and the psychologist." Id. at 403. However, the

evaluations did not constitute new evidence warranting a re-trial, as Allen and trial counsel were both made aware of his mental condition prior to trial. Allen had previously been hospitalized for mental illness and had even undergone electroshock therapy for his condition. The trial court further noted that, "even assuming it is in the nature of Allen's illness to conceal its nature and severity, there is no contention that his attorneys . . . labored under the same handicap." Id.

Even if we assume that Dr. Cornell's report constitutes newly discovered evidence, we cannot agree that it was undiscoverable at the time Carneal pled guilty. Obviously, Carneal and his trial counsel were aware of a mental condition, ultimately accepting a plea of "guilty but mentally ill." Before the plea, Dr. Cornell diagnosed Carneal with schizotypal personality disorder, which he indicated may involve temporary psychotic episodes. While his present diagnosis of schizophrenia is much more severe, the possibility that Carneal was in the midst of a psychotic episode at the time of the shooting was recognized prior to sentencing. More notably, Carneal was given the more severe diagnosis of schizophrenia as early as 1999, yet his motion for a new trial was not filed until 2004. For these reasons, we do not believe the trial court abused its discretion in rejecting Carneal's motion for a new trial as untimely.

## CR 60.02 Motion

Finally, Carneal reiterated his claims for relief under RCr 11.42 and RCr 10.06, arguing they also constitute a "reason of an extraordinary nature justifying relief" under CR 60.02(f). CR 60.02(f) requires the motion be brought

19

within "a reasonable time." What constitutes a reasonable time is left to the discretion of the trial court, and a hearing on this issue is not required. <u>Gross v. Commonwealth</u>, 648 S.W.2d 853, 858 (Ky. 1983). For the reasons explained *supra,* we find no abuse of discretion in the trial court's determination that Carneal's CR 60.02 motion was untimely.

## Conclusion

The opinion of the Court of Appeals is reversed as to Carneal's RCr 11.42 motion. We affirm the Court of Appeals with respect to the CR 60.02 and RCr 10.02 motions. The judgment of the McCracken Circuit Court is reinstated.

Abramson, Noble, Schroder, Scott, Venters, JJ., concur. Minton, C.J., not sitting.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Jack Conway
Attorney General

David A. Smith
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY  40601-8204


COUNSEL FOR APPELLEE/CROSS-APPELLANT:

David Hare Harshaw, III
Assistant Public Advocate
Department of Public Advocacy
207 Parker Drive, Suite 1
LaGrange, KY  40031

Timothy G. Arnold
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY  40601