RENDERED: APRIL 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0921-MR

BLAINE ANDREW BRAY                                        APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE A.C. MCKAY CHAUVIN, JUDGE
ACTION NO. 12-CR-003839-001

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, JONES, AND KRAMER, JUDGES.

JONES, JUDGE: Acting without the assistance of counsel, the Appellant, Blaine

Andrew Bray, appeals the Jefferson Circuit Court's July 7, 2020 order denying

Bray's renewed motion for a new trial pursuant to RCr[1] 10.02, renewed motion

pursuant to RCr 11.42, and renewed motion for relief pursuant to CR[2] 60.02.

Having reviewed the record and being otherwise sufficiently advised, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

[2] Kentucky Rules of Civil Procedure.

# I. BACKGROUND

On August 18, 2012, Bray and his caretaker and girlfriend, Carolyn Logsdon, met a group of friends at Spectators Bar and Grill in Louisville, Kentucky. The evening began peacefully enough. However, at some point, Bray and Logsdon became involved in a dispute with some other patrons at the bar. The dispute became physical, and ultimately Bray was indicted jointly with Logsdon for first-degree assault of Joshua Masingo and indicted alone in the first-degree assault of Patrick Kelly.

Following a jury trial, on July 1, 2013, Bray was convicted of first-degree assault of Masingo and acquitted of first-degree assault of Kelly. Logsdon was convicted of complicity to commit first-degree assault of Masingo. Bray and Logsdon agreed to waive their rights to have the penalty phase before the jury and to a direct appeal in exchange for a plea agreement and recommendation on sentencing by the Commonwealth for twelve years' incarceration for Bray and ten years for Logsdon.[3] Thereafter, Bray's and Logsdon's separate counsel were granted leave to withdraw, and Bray and Logsdon retained new, joint counsel.

We summarized the somewhat unusual and complicated procedural history that followed new counsel's entry of appearance in our prior Opinion. *See*

---

[3] As detailed below, Logsdon ultimately pleaded guilty to amended charges of facilitation to assault in the first degree, a Class D felony. She received five years, probated.

*Bray v. Commonwealth*, No. 2014-CA-000128-MR, 2017 WL 2713458 (Ky. App.

Jun. 23, 2017).

> Before sentencing, on September 12, 2013, new counsel filed a joint motion for new trial pursuant to RCr 10.02. Bray and Logsdon argued there was newly discovered evidence: (1) Dennis Beavers, a bouncer at Spectators, and Rickie Riordan, a patron at the bar, would testify that the physical altercation was started by Kelly and not Bray, and support Bray's and Logsdon's claims that they were defending themselves; and (2) the Commonwealth did not disclose information that Kelly killed a man in a motor vehicle collision by running over his scooter just days prior to trial and, thus, had a motive to curry favor with the prosecution to avoid being prosecuted for homicide. Bray and Logsdon also argued the Commonwealth withheld this exculpatory evidence.

> The Commonwealth opposed the motion. It argued the potential evidence of Beavers and Riordan was not newly discovered as trial counsel planned to call them to testify at trial but [chose] not to do so after learning of negative information their testimony would allow into evidence. It also argued the auto accident was not exculpatory because no charges were anticipated.

> On December 20, 2013, the trial court held an evidentiary hearing on the RCr 10.02 motion. Bray and Logsdon called Beavers and Riordan to testify.

> Beavers testified about Kelly's reputation for being aggressive regarding pool, Kelly being the aggressor in the confrontation between Kelly and Bray, and that he had to pull Kelly off Bray and was assisted by his cousin Riordan in doing so. He and Riordan's legs became tangled and they fell to the floor with Kelly, so he did not see the interaction between Bray and Masingo, but he heard a man yell something like "get your hands off her neck" or "get your hands off her throat" and he heard a

-3-

woman yell "get the f*** off me." After the fighting ended and Beavers told everyone involved to leave, Bray, Logsdon and Kelly left. Beavers testified he told the investigating police officer, the bar owner and the detective that Kelly was the aggressor and Bray and Logsdon were defending themselves. Beavers testified that although he was subpoenaed, he never spoke with the attorneys representing Bray and Logsdon before the trial.

Riordan testified consistently with Beavers about Kelly's reputation, his aggression that night and having to subdue him and then falling. Riordan testified he saw a small blood spot on Kelly, and Kelly was unaware he was hurt until Riordan told him, but that when Kelly lifted his shirt the wound was small and did not look like a stab wound. Riordan denied telling Bray to get rid of a knife. He testified that he also told Bray and Logsdon to leave. He testified he was never interviewed by the police or the attorneys.

During the hearing, there was discussion about when the judge and attorneys became aware of the traffic collision involving Kelly. The judge recalled Kelly disclosed it himself in a conference with the judge after an altercation occurred outside the courtroom between him and Bray's father. The Commonwealth stated the defense attorneys were told that another witness overheard Riordan having a conversation with the defendants about getting rid of the knife and because Riordan could be impeached by this testimony, the defense attorneys chose not to call him as a matter of trial strategy.

On December 26, 2013, the trial court denied Bray's and Logsdon's joint motion for a new trial and sentenced Bray to twelve years' incarceration and Logsdon to ten years' incarceration in accordance with their plea agreements. On January 17, 2014, Bray and Logsdon timely filed separate appeals.

-4-

On February 21, 2014, Bray and Logsdon filed a joint motion for relief of judgment pursuant to CR 60.02. They argued the jury instructions were erroneous as to Logsdon and this error also prejudiced Bray.

On March 14, 2014, Bray and Logsdon filed a joint motion to vacate, set aside or correct their judgments pursuant to RCr 11.42. They argued numerous errors by trial counsel and also raised the issue of the Commonwealth withholding exculpatory evidence.

While the CR 60.02 and RCr 11.42 motions were pending, Bray requested and the Court of Appeals granted his motion that the appeal of the order denying his motion for new trial be held in abeyance.

On June 27, 2014, the trial court held an evidentiary hearing on the RCr 11.42 motion. Mark Hall, Logsdon's trial counsel, testified regarding his conduct in defending her including that it was his strategy to separate Logsdon's conduct from Bray's. While Logsdon also struck Masingo with a pool cue in the back of the head, the Commonwealth's expert, Dr. Smock, testified this blow could not have caused Masingo's injuries.

[Attorney] Hall testified, once he saw the proposed jury instructions, he believed he made a tactical mistake in not focusing on defending Logsdon on complicity. He believed he could have improved her outcome by focusing on also defending Bray's actions.

[Attorney] Hall also testified regarding issues impacting Bray. Bray is severely disabled and his previous back injury makes him more susceptible to paralysis if he receives additional injury to it. If Bray's medical condition was disclosed to the jury, his counsel could argue Bray had a compelling reason not to instigate a conflict and, therefore, all his actions were in response to the actions of others. [Attorney] Hall and Bray's trial

-5-

counsel should have requested disclosure of the Commonwealth's experts regarding serious physical injury in order to prepare for their testimony and possibly call witnesses to rebut it. An objection should have been made when Detective Hedges gave an opinion as to serious physical injury on the grounds he was not qualified. Counsel should have asked for a missing evidence instruction regarding Kelly's handwritten statement which was given to Det. Hedges and then never disclosed. Bray's attorney erred by asking a question which would disclose that Bray and Logsdon exercised their right to remain silent, there was no basis for asking about that and [Attorney] Hall objected and received an admonishment for the jury. [Attorney] Hall opined that he should have asked for a mistrial, but only for Logsdon. It would have been helpful to investigate what Beavers could have testified. He did not call Riordan because the Commonwealth would have impeached him. Beavers was problematic because he attended court with counsel due to pending charges against him.

The trial court orally denied the RCr 11.42 motion as to Logsdon, ruling there was no flaw in [Attorney] Hall's representation of Logsdon which was a matter of trial strategy. However, the trial court, after noting that the hearing and argument focused on Logsdon's counsel, invited Bray's current counsel to develop a record on ineffective assistance of Bray's trial counsel at the upcoming CR 60.02 hearing and reserved ruling on Bray's RCr 11.42 motion.

On July 25, 2014, the trial court held a hearing on the CR 60.02 motion. The argument from counsel focused on improper jury instructions as to Logsdon, by failing to include a self-defense instruction and allowing the jury to convict her of complicity with a reckless or wanton state of mind. As to Bray, counsel argued that the trial court should assume Logsdon's erroneous instruction was prejudicial to him and, if the jury was

deprived of the opportunity to consider whether Logsdon's actions were justified, it may have impacted its decision as to Bray and requested that he also receive a new trial.

At the conclusion of argument, the trial court called a bench conference and urged that counsel find an alternative solution as to Logsdon to avoid either a lengthy appellate process or a new trial. The Commonwealth offered to amend Logsdon's charges down to criminal facilitation to assault in the first degree, a D felony, and recommend a five-year sentence, probated for five years.

Logsdon accepted this plea agreement and consequently, the trial court granted the CR 60.02 to vacate Logsdon's conviction and Logsdon entered into an *Alford* plea to the amended charge. In accordance with the agreement, Logsdon was sentenced to five years, probated.

While the trial court invited counsel to present evidence on Bray's RCr 11.42 motion after Logsdon was sentenced, his current counsel declined to do so. Counsel asked that the motion as to Bray stand as submitted.

On January 6, 2015, the trial court denied Bray's RCr 11.42 motion without addressing his claims individually:

> While the Court recognizes that trial did not turn out well for Mr. Bray, there is nothing in the record to suggest that the jury found him guilty because of anything that trial counsel did at trial as opposed to what they believed Mr. Bray did at [Spectators] bar on the night the prosecuting witness was injured . . . all of which was captured on high-quality surveillance video for the jury to see. The assignments of error culled from

the record are, despite current counsel's considerable best efforts, of no consequence. There is nothing in the record to reasonably suggest that trial counsel committed any error that was objectively unreasonable under the circumstances presented at trial, or that Mr. Bray did not receive a fair trial as a result.

In a separate order entered on the same day, the trial court denied Bray's CR 60.02 motion, stating that "despite any concerns or reservations the Court may have with respect to the jury's ability to appreciate the legal nuances of the instructions for Ms. Logsdon (the co-Defendant), the Court is wholly satisfied with the relatively straight-forward jury instructions for Mr. Bray."

On January 15, 2016, Bray filed separate appeals from the trial court's orders denying his RCr 11.42 motion and CR 60.02 motion.

*Id.* at *1-4 (footnote omitted).

As part of his first appeal Bray argued: (1) the trial court erred in denying him a new trial because the Commonwealth failed to disclose the exculpatory evidence that prior to trial, Kelly killed another individual in a motor vehicle collision; (2) the trial court should have granted his CR 60.02 motion because the trial court erred in improperly instructing the jury on complicity and self-protection in Logsdon's jury instructions which prejudiced Bray; and (3) the trial court should have granted Bray relief pursuant to RCr 11.42. With respect to his RCr 11.42 motion, Bray argued that:

(1) trial counsel failed to investigate and present evidence from favorable eyewitnesses including Beavers and Riordan; (2) trial counsel repeatedly promised the jury the testimony from the bouncers at Spectators bar and then failed to present it; (3) trial counsel failed to request proper jury instructions or object to improper jury instructions on complicity regarding Logsdon; (4) trial counsel failed to present proof to the jury that Bray is severely disabled and had fear of reinjuring his back; (5) trial counsel failed to request disclosure of the names, opinions or bases for the opinions of the expert witnesses for the Commonwealth to allow adequate preparation for trial and to consider presenting a defense expert witness; (6) trial counsel failed to object when Det. Hedges testified that in his opinion the injuries to Masingo and Kelly constituted serious physical injury; (7) trial counsel failed to request a missing evidence instruction after Det. Hedges testified that Kelly gave him a written statement but he did not recall what he did with it; and (8) trial counsel erred by introducing evidence that Bray and Logsdon asserted their right to remain silent and Logsdon's counsel erred by failing to request a mistrial.

*Id.* at *5.

This Court carefully considered and rejected each of Bray's assignments of error. *Id.* at *5-8. Thereafter, we affirmed "the Jefferson Circuit Court's orders denying Bray's RCr 10.02, RCr 11.42 and CR 60.02 motions." *Id.* at *9. Bray's petition for discretionary review was denied by the Kentucky Supreme Court on October 25, 2017.

On June 7, 2020, Bray filed a renewed motion with the trial court seeking a new trial pursuant to RCr 10.02, an order vacating, setting aside, or correcting his sentence pursuant to RCr 11.42, and/or relief from his judgment of

-9-

conviction pursuant to CR 60.02.  By order entered July 7, 2020, the trial court

denied Bray's motion as follows:

> 1.  For the reasons set out in the Court's order of
> December 20, [2013] (entered on December 26, 2013),
> there is no evidence of record which would support
> providing the Defendant with relief pursuant to RCr
> 10.02.
>
> 2.  For the reasons set out in the Court's order of
> December 23, 2014 (entered on January 6, 2015) there is
> no evidence of record to suggest that counsel's
> representation fell below any objective standard of
> reasonableness.  *See Strickland v. Washington*, 446 U S
> [668] (1984).
>
> 3.  The record is entirely sufficient such that no further
> hearings [are] necessary for the Court to rule on the
> Defendant's motion.

R. at 559-60.

This appeal followed.

## II. ANALYSIS

Bray's appellant brief is disjointed and difficult to follow.  It also fails

to comply with our appellate rules for briefing in several respects.  However, we

recognize that Bray is proceeding *pro se*.  As such, we have afforded him some

leniency and have done our best to piece together his various arguments.  *See*

*Commonwealth v. Miller*, 416 S.W.2d 358, 360 (Ky. 1967) ("[H]ere we have a

prisoner proceeding *pro se*, therefore, we do not impose on him the same standards

as those applied to legal counsel.").

-10-

Based on our review of Bray's brief, it appears his arguments are as follows: (1) his trial counsel, Robert Walker, was ineffective where he failed to introduce statements Bray's accusers made in district court concerning the bar fight;[4] (2) Attorney Walker was ineffective for failing to object to the prosecution's failure to turn over certain exculpatory evidence; (3) Attorney Walker was ineffective for failing to introduce evidence showing that the police coerced Kelly into saying that Bray was the instigator; (4) Attorney Walker was ineffective for failing to prove that the bar surveillance video played by the prosecution during trial had been altered; (5) Bray's new trial counsel was ineffective for failing to call Attorney Walker to testify during the prior RCr 11.42 and CR 60.02 hearings before the trial court; (6) Bray's new counsel was ineffective because he had a conflict of interest where he represented both Bray and Logsdon; (7) Attorney Walker and new counsel were ineffective in failing to move for separate trials and/or post-conviction proceedings of Bray and Logsdon; and (8) the Commonwealth violated Bray's constitutional rights when it failed to turn over all exculpatory evidence prior to Bray's trial.

"A motion for a new trial based upon the ground of newly discovered evidence shall be made within one (1) year after the entry of the judgment or at a

---

[4] Bray repeatedly refers to these statements being made in the "lower court" prior to his case being "transferred" to circuit court. We presume he is referring to the Jefferson District Court.

later time if the court for good cause so permits." RCr 10.06(1). Bray's motion for a new trial pursuant to RCr 10.02, his second such motion, was filed over six years after entry of his final judgment. Although Bray cites the discovery of "new evidence," he fails to explain why the new evidence he claims entitles him to a new trial could not have been discovered within a year of entry of his judgment. Accordingly, the trial court did not abuse its discretion in denying Bray's second RCr 10.02 motion for a new trial. *See Commonwealth v. Carneal*, 274 S.W.3d 420, 432 (Ky. 2008).

Bray's RCr 11.42 arguments can be broken down into two categories: (1) arguments concerning Attorney Walker's performance during Bray's trial; and (2) arguments concerning Bray's new counsel's performance during the prior RCr 11.42 and CR 60.02 proceedings.

With respect to the first category, Bray has already made an RCr 11.42 motion regarding Attorney Walker's allegedly deficient performance. The arguments Bray raised in his subsequent RCr 11.42 motion are all issues that were or could have been raised in the prior proceedings. Accordingly, the circuit court did not abuse its discretion in denying Bray's successive RCr 11.42 motion. *See Gross v. Commonwealth*, 648 S.W.2d 853, 857 (Ky. 1983) ("Final disposition of [an RCr 11.42] motion, or waiver of the opportunity to make it, shall conclude all issues that reasonably could have been presented in that proceeding.").

-12-

With respect to the second category, while Kentucky recognizes a claim premised on the ineffective assistance of appellate counsel on direct appeal, "there is no counterpart for counsel's performance on RCr 11.42 motions or other requests for post-conviction relief." *Hollon v. Commonwealth*, 334 S.W.3d 431, 437 (Ky. 2010). Because Kentucky does not recognize a claim for ineffective assistance of post-conviction counsel, the trial court did not err in denying Bray's motion with respect to new counsel's performance during the prior RCr 11.42 and CR 60.02 proceedings.

Finally, "CR 60.02 does not permit successive post-judgment motions." *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (Ky. 2014). Bray previously brought a CR 60.02 motion. His argument concerning the Commonwealth's failure to turn over exculpatory evidence and tampering with the video surveillance could have been made as part of Bray's prior CR 60.02 motion. As such, we find no error in the trial court's denial of Bray's renewed CR 60.02 motion.

## III. CONCLUSION

For the reasons set forth above, we affirm the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Blaine Andrew Bray, *pro se*
Central City, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky